## WALKER AND WIFE vs. SMITH.

[BILL IN EQUITY AGAINST HUSBAND AND WIFE TO SUBJECT WIFE'S SEPARATE
ESTATE TO PAYMENT OF CHARGE.]

1. *Wife's separate estate may be charged by verbal or implied promise.*—If a married woman, owning a steam saw-mill as part of her separate estate, hires slaves to work in and about it, her separate estate may be subjected in equity to the payment of the hire, although no note was given for it; and if the slaves run away during the term of hiring, and are committed to jail as runaways, and she knowingly permits them to remain in jail until after the expiration of the term, the owner is entitled to reimbursement out of her separate estate, for the amount of jail fees necessarily paid by him, after the expiration of the term, in order to regain the possession of the slaves.

2. *Liability of hirer of slave.*—If a slave runs away during the term of the hiring, and is committed to jail as a runaway, it is the duty of the hirer to pay the necessary jail fees; and if he refuses to do so, the owner, at the expiration of the term, may pay them, and thereby acquire a cause of action against him.

3. *Proper parties to bill to subject wife's separate estate to payment of charge.*—A bill which seeks to subject the separate estate of a married woman to the payment of a charge created by her during coverture, is properly filed against her and her husband; and if it asserts no liability against the husband, and no claim for which either husband or wife can be charged personally, and its frame is such that, if a decree cannot be rendered against the wife's separate estate, no relief whatever can be granted under it, there is no misjoinder of defendants.

4. *Misjoinder of causes of action.*—When the separate estate of a married woman is liable in equity for the hire of a slave under an express contract, and also for reimbursement of jail fees necessarily paid by the owner, after the expiration of the term of hiring, to regain the possession of his slaves, who had been committed to jail as runaways during the term, the two demands may be joined in one bill.

5. *Waiver of objection by failing to raise it in primary court.*—Where the defendants file an answer, embracing a demurrer on several distinct grounds, they cannot afterwards raise in the appellate court, for the first time, an objection to the prayer of the bill, which, if it had been raised before the chancellor, might have been remedied by an amendment.

6. *Service of subpœna on wife.*—Where a subpœna is issued against husband and wife, and is returned by the proper officer, "executed" generally, the service on the wife is sufficient.

7. *General motion to suppress deposition.*—A general motion to suppress a deposition, which does not specify any particular grounds of objection, if it can be considered at all in the appellate court, will receive the strongest construction that it reasonably admits of against the objecting party.

APPEAL from the Chancery Court of Macon.

Heard before the Hon. A. J. WALKER.

37

This bill was filed by James H. Smith against Benjamin W. Walker and Mary E., his wife, alleging that, in December, 1852, said Mary E., then the wife of said Benjamin W. Walker, being possessed of a steam saw-mill as a part of her separate estate which she then owned and enjoyed, and being desirous to hire slaves to work in and about said mill, entered into a contract with complainant for the hire of two slaves, for the year 1853, at a stipulated price, payable on the first day of January, 1854; that in this contract said Mary E. was represented by her said husband, as her agent, and complainant's son acted as his agent; that the slaves were delivered to Mrs. Walker under the contract, were received by her, and were employed for a long time about the business of said mill; that said mill then was, and still is, the separate property of Mrs. Walker, and was managed by her husband as her agent; that she has, in addition, a large separate estate, consisting of lands and personal property; that said slaves, during the year for which they were hired to Mrs. Walker, ran away, and were lodged in jail as runaways; that Mrs. Walker was notified of their confinement in jail, and was requested by complainant to take them out, but she failed and refused so to do; that complainant, after the expiration of the term of hiring, was compelled, in order to regain the possession of his said slaves, to pay jail fees amounting to $175; that Mrs. Walker is, in equity, bound to refund to complainant the amount thus necessarily paid by him to regain the possession of said slaves, as also the amount of their hire by the terms of said contract; and that she has hitherto refused to do so. The prayer of the bill is, that an account may be stated between complainant and defendants, of and concerning the matters embraced in the bill, and that defendants may be decreed to pay to complainant whatever sum they may be found in arrears to him; and the prayer for other and further relief is added.

An answer on oath being waived, the defendants filed a joint and several answer, in which they admitted that Mrs. Walker owned a separate estate, of which the said steam saw-mill constituted a part, but denied that she made the contract alleged in the bill, or any other contract for the hire of slaves from complainant, or that her husband acted as

her agent in making any such contract; and alleged, on the contrary, that said Benjamin W.· Walker hired said slaves from complainant for himself, and received possession of them under the contract. They allege fraud and misrepresentations, on the part of complainant, in the making of· this contract, and a consequent rescission by said Walker. Their answer also contains a demurrer, 1st, for want of equity; 2d, because complainant has a remedy at law; 3d, on account of a misjoinder of defendants; 4th, on account of a misjoinder of accounts; and, 5th, because complainant cannot be permitted, by paying the jail fees to the sheriff, to make Mrs. Walker his debtor, without her request.

· The questions raised on the evidence need not be noticed.·

On final hearing, the chancellor overruled the demurrer, and rendered a decree in favor of the complainant, subjecting Mrs. Walker's separate estate to the payment of his demands; and this decree, with the refusal to suppress certain depositions, is now assigned as error.

GEO. W. GUNN, for the appellants, made these points :

1. The evidence of service was not sufficient to bring Mrs. Walker into court.—Hollinger and Wife v. Bank of Mobile, 8 Ala. 605; Hartley v. Bloodgood, 16 *ib*. 233; Ferguson v. Smith, 2 Johns. Ch. 139; 1 Dan. Ch. Practice, 500, note 2; 1 Hoff. Ch. Pr. 232.

· 2. The bill is radically defective, and the demurrer to it should have been sustained. The demand which it seeks to enforce is shown to be a general demand, resting only in parol; and for such demands the wife's separate estate is not liable.—Clancy on Husband and Wife, 344–46, and cases cited; Dan. Ch. Pr. 199; Bradford and Wife v. Greenway, Henry & Smith, 17 Ala. 802. The *dictum* to the contrary in Collins v. Rudolph, 19 Ala. 616, is unsupported by authority.

3. A married woman is incapable of charging herself personally, either at law or in equity. Charges on her separate estate are regarded in equity as appointments, or appropriations, for the benefit of the creditor, of so much of her estate as may be necessary for its payment; but the power to create these charges is derived, not from the law, but from the deed of settlement. A bill, therefore, which seeks to subject her

Walker and Wife v. Smith.

estate to the payment of such charge, must show that she holds that estate under a deed which allows her to charge it, and must contain a prayer for the specific relief sought. In both these particulars, this bill is fatally defective: it contains no specific prayer for relief against the wife's separate estate, but asks only a personal decree against the defendants; nor does it show that she has the power to charge her separate estate.—Dan. Ch. Pr. 194, 198, and cases cited; Strange v. Watson, 11 Ala. 324; 2 Story's Equity, §§ 1399 to 1401; 2 Kent's Com. 164, 166; Jacques v. M. E. Church, 17 Johns. 548; Gardiner v. Gardiner, 22 Wend. 528; Ewing v. Smith, 3 Dess. 417; N. A. Coal Co. v. Dyett, 7 Paige, 27; Magwood & Patterson v. Johnston, 1 Hill's (S. C.) Ch. 228; Cumming & Pollock v. Williamson, 1 Sandf. Ch. 17; Curtis v. Engel, 2 ib. 287; Rogers v. Ludlow, 3 ib. 104; Lyne's Executor v. Crouse, 1 Barr, 111; Williamson v. Beckham, 8 Leigh, 20; Montgomery v. Agricultural Bank, 10 Sm. & Mar. 567; Doty v. Mitchell, 9 ib. 435; Morgan v. Elam, 4 Yerg. 375; Marshall v. Stephens, 8 Humph. 159; 9 Watts, 137; 1 Bro. C. C. 16; 2 Roper on Husband and Wife, 241, note; Francis v. Wigzell, 1 Madd. 145.

4. The demurrer for multifariousness should have been sustained. The negro hire and jail fees are separate and distinct items, having no necessary connection. As asserted in the bill, the first is a joint demand, and the other a separate demand.—Story's Equity Plead. 280; Dan. Ch. Pr. 393; 6 Johns. Ch. 163; McIntosh v. Alexander, 16 Ala. 87.

5. The payment of the jail fees by complainant did not constitute defendants his debtors.—Kenan v. Holloway, 16 Ala. 53; Wray v. Cox, 24 ib. 337.

6. The case is with the appellants on the merits.

WILLIS & WILLIAMS, and CLOPTON & LIGON, contra:

1. The bill sets forth a good equitable cause of action, and the husband and wife are properly joined as defendants. The demands sought be enforced are proper charges against Mrs. Walker's separate estate.—Collins v. Rudolph, 19 Ala. 616; Hooper v. Smith and Wife, 23 ib. 639; N. A. Coal Co. v. Dyett, 7 Paige, 9; same case, 20 Wend. 570. If the deed under which she held her separate estate restricted her power

to charge it, that was matter of defense, and should have been shown in her answer.

2. It was Mrs. Walker's duty, at the expiration of the term of hiring, to return the slaves to their owner. This she failed to do, but suffered them to remain in jail; and complainant was compelled, in order to regain possession of them, to pay the necessary jail fees. For this payment he is entitled to reimbursement out of her separate estate. The claim for the hire of the slaves, and the claim for reimbursement on account of the jail fees, grow out of the same contract, and may be enforced in the same suit.

3. The prayer of the bill, though not formal, is sufficiently specific; and, even if the special prayer were defective, the appropriate relief would be granted under the general prayer.

4. The return of the sheriff shows, in legal effect, a service on both the defendants.

RICE, C. J.—When a married woman, owning a steam saw-mill as part of her separate estate, hires slaves of another to work in and about it, at a specified price and for a specified term, and receives them into her service, her separate estate may be subjected by a court of equity to the payment of such price, although no note was given for it; and the bill for that purpose may be filed against her and her husband.— Ozley v. Ikleheimer, 26 Ala. 332; Calvert on Parties, 269; Dyett v. N. A. Coal Co., 20 Wend. 570; Waldron, Isley & Co. v. Simmons, at the present term.

If, during the term of hire, the slaves run away from her, and are taken up and committed to jail as runaways in this State; and, with notice of this, she permits them to remain in jail until the expiration of the term; and the owner, to regain possession of them, is compelled to pay their jail fees, —he thereby acquires a right to reimbursement of the sum thus paid, out of her separate estate. It was her duty to pay these fees, and to restore the slaves to their owner at the expiration of the term of hire.—Story on Bail. § 397. As she disregarded her obligation in this respect, the owner, at the expiration of the term, had the right to pay such fees, in order to regain the possession of his slaves, and to obtain reimbursement out of her separate estate. The jailer had a

right to detain the slaves until the fees were paid. The owner has been compelled to pay a debt, which, in equity and good conscience, she should have paid, and therefore his right to reimbursement rests upon sound principle.—Plummer v. Sherman, 29 Maine Rep. 555; Ticonic Bank v. Smiley, 27 ib. 225; Mix v. Hotchkiss, 14 Conn. 32.

The bill in this case asserts no liability against the husband. It shows nothing for which either the husband or wife can be charged personally. It sets forth a demand for which her separate estate is liable, if the allegations of the bill are established. The frame of the bill is such, that if a decree cannot be rendered against her separate estate, no relief whatever can be granted under it. It is clearly a bill to subject her separate estate to the payment of the demand therein set forth. There is no "misjoinder of defendants," nor of "accounts."—Calvert on Parties, 269–273; Gerald and Wife v. McKenzie, 27 Ala. 166.

As the defendants filed a joint and several answer, embracing a demurrer specifying five distinct grounds, and did not by demurrer or otherwise, in the court below, raise the objection, that the bill contains no special prayer for a decree against the separate estate of the wife, and that under the general prayer no such decree can be made, we will not even consider that objection. By failing to raise such an objection in the court below, where, if it be a sound one, it might and ought to have been remedied by an amendment, the party loses the benefit of it in the appellate court.—Code, § 2900.

The subpœna- issued in this case embraced both husband and wife, and was returned by the sheriff, "executed." This return means that he served both husband and wife, and shows that she was made a defendant in compliance with our 4th rule of practice in chancery.—Hollinger v. Bank, 8 Ala. 605.

The evidence convinces us that the substantial allegations of the bill are true, and that the slaves of the complainant were not hired upon the mere credit and personal liability of the husband.—Dyett v. N. A. Coal Co., supra.

Two depositions of Thomas B. Jones, and two depositions of Bython Smith, appear in the record. The deposition of

Jones last taken, and the deposition of Smith last taken, were taken by the defendants, and certainly contain nothing which would authorize either of the defendants to ask for their suppression; yet the record shows that Mrs. Walker moved "to suppress the depositions of Thomas B. Jones and Bython Smith as evidence against her", and that the motion was overruled. This motion to suppress is general. It specifies no ground on which the suppression was asked. It does not even show that it sought to suppress only one of the depositions of Jones, and only one of the depositions of Smith. Its language is broad enough to admit of the construction that it sought to suppress both depositions of Jones, and both depositions of Smith. Thus construed, it is clearly not sustainable; and if such general motions can be considered at all on an appeal, the strongest construction which they reasonably admit of, against the party making them, will be placed upon them.

There is no error in the decree, and it is affirmed, at the costs of the appellants.