# Huntsvile Belt Line & Monte Sano Railway Co. *v.* Corpening & Co.

### *Assumpsit.*

1. *Suit does not constitute estoppel unless pursued to judgment*—A suit by a sub-contractor against a contractor to recover for work done on a railroad in which the railway company is garnished as the supposed debtor of the contractor, does not estop the plaintiff from bringing another suit against the railway company founded on the same claim, unless it is shown that the first suit resulted in a judgment in favor of the plaintiff.

2. *Authority of agent to bind corporation.*—In a suit for work and labor done in constructing a railroad under an alleged contract with its chief engineer, the burden of proof that the engineer had authority from the board of directors of the railway company to make the contract, is on the plaintiff.

3. *Acts of agent binding only in the scope of his authority.* —Acts done by an agent within the scope of his authority and declarations accompanying such acts, are binding on the principal as if done or spoken by himself, but declarations of the agent narrative of past transactions are not competent evidence against the principal.

4. *Proof of agency.*—Acts done and declarations made by one assuming to act as agent are not competent to prove the agency, unless subsequently brought to the knowledge of the principal and ratified by him.

[Huntsville Belt Line & Monte Sano R'y Co. v. Corpening & Co.]

5. *Witness—examination of, in discretion of court.*—Whether leading questions may be propounded to a witness or a witness may be cross-examined on matters about which he was not examined in chief, are matters within the discretion of the trial court.

6. *Relevancy of knowledge of directors of corporation.*—In a suit to recover for work done on a railway, it is proper to admit testimony that one of the directors of the corporation for which the road was built, saw the plaintiff engaged in the work of construction, and testimony of the value of such work is admissible.

7. *Opinion of witness as to party bound for payment inadmissible.*—The reply of a witness to the question, "Who did the chief engineer say would pay for the work?" stating "I judged the company would pay for it," is a conclusion, and not admissible as testimony.

8. *Ratification implied from acquiescence must be with knowledge of facts.*—The chief engineer of a railroad corporation which is sued by a sub-contractor for work done on its construction, being a director of the corporation and also member of a firm which contracted to construct it, a charge that knowledge on the part of the directors that the work was done under a contract with the chief engineer, and acquiescence therein was binding on the corporation, is erroneous in failing to assert that the directors knew that the contract was made in the name of the corporation.

APPEAL from Madison Circuit Court.

Tried before Hon. H. C. SPEAKE.

Corpening & Company brought suit against the Huntsville Belt Line & Monte Sano Railway Co., Danforth & Armstrong and Arthur Owen Wilson & Co., to recover for work and labor done in the construction of a railroad. Before the jury retired, the plaintiffs amended their complaint by striking out the names of all the defendants except the railway company.

HUMES, SHEFFEY & SPEAKE, for appellant, cited as to estoppel, 3 Brick. 446; Bigelow, 689; *R. R. v. McCarthy*, 96 U. S. 258; that admissions by agents do not bind the principal, *Henry v. Bank*, 63 Ala. 527; that proof of authority of an agent must be independent of his own acts or declarations, *Talladega Co. v. Woodward*, 44 Ala. 287; *Waites v. Neal*, 65 Ala. 59.

WILLIAM RICHARDSON, and LANE & WHITE, for appellee, insisted that there was no estoppel: *Adler v. Pin*, 80 Ala. 351; *Miller v. Hampton*, 37 Ala. 342; *Gregor v. Hamilton*, 29 Ala. 233, and many other cases.

STONE, C. J.—Plaintiffs in the court below, Corpening & Co., brought suit against Danforth & Armstrong and Arthur Owen Wilson & Co., two copartnerships, for the recovery of compensation for the identical services sued for in this action. As collateral to their suit, they sued out garnishment pro-

cess against the appellant corporation, as the supposed debtor of the defendants, Danforth & Armstrong and Arthur Owen Wilson & Co. To obtain this garnishment process it was necessary that affidavit be made, setting forth the amount due from defendants to plaintiffs, that affiant believes that process of garnishment is necessary to obtain satisfaction of the demand sued for, and that the proposed garnishee " is supposed to be indebted to the said defendants, or to have effects of the said defendants in its possession, or under its control." That affidavit was made by Charles D. Smith, a member of the partnership firm of Corpening & Co., plaintiffs in this action. The members of the firm of Corpening & Co. were Corpening, Smith and Brittain. Each of the partners signed the bond in suing out the garnishment ; and the writ of garnishment was issued pursuant to the affidavit and bond, and was served on "The Huntsville Belt Line and Monte Sano Railway Company" as the supposed debtor of Danforth & Armstrong, and of Arthur Owen Wilson & Co.

The theory of that suit was that Danforth & Armstrong and Arthur Owen Wilson & Co. were the debtors who owed Corpening & Co., the debt sued for in the action before us, and that the Huntsville Belt Line and Monte Sano Railway Company was supposed to be indebted to the two co-partnerships, defendants in that suit. This record does not inform us what disposition, if any, has been made of that suit or proceeding ; and hence we can not know whether it is still pending, or has been disposed of.

The present suit was brought against three defendants— Huntsville Belt Line & Monte Sano Railway Company, Danforth & Armstrong and Arthur Owen Wilson & Co., and in the complaint claims a recovery against the three. The complaint contains one special count and the common counts. In the special count they claim "for work done by plaintiffs as sub-contractors in grading and constructing and clearing, bridging, ditching and draining the Monte Sano Railway." In the common counts plaintiffs do not describe themselves as sub-contractors.

The Huntsville Belt Line & Monte Sano Railway Co. interposed a special plea in estoppel ; namely, that the cause of action asserted in this suit is the same as that counted on in the former suit ; and having in that former suit declared that Danforth & Armstrong and Arthur Owen Wilson & Co. were their debtors, and having sued out garnishment against the Belt Line & Railway Company as the supposed debtor of Danforth & Armstrong and of Arthur Owen Wilson & Co., this estopped plaintiffs from asserting that The Huntsville

Belt Line & Monte Sano Railway Co. is indebted to them, Corpening & Co. The Circuit Court sustained a demurrer to this plea, and we think rightly. Suing as sub-contractor, claiming that Danforth & Armstrong and Arthur Owen Wilson & Co. were their debtors, and seeking only to reach the Belt Line & Railway Company as debtor to the two firms or partnerships they were suing, was certainly testimony in the form of an admission that plaintiffs did not regard the Belt Line & Railway Company as their debtor, bound to them by original contract. But it was only an admission, its weight to be determined by the circumstances attending it. If that case had gone into judgment, granting the relief sought, this would have constituted it an estoppel.—*Hill v. Huckabee*, 70 Ala. 183, and authorities.

We have treated this case, thus far, as if there had been two suits brought. We suppose such was the case, but the record does not positively inform us. Whether so, or not, is immaterial in this case; as what is shown to have been done would not, in either form, rise to the dignity of an estoppel.

We have stated that this suit was brought against the corporation and against two partnerships. The pleadings and issues remained in this form until all the evidence was adduced. Thereupon plaintiffs were allowed to amend their complaint by striking out the names of Danforth & Armstrong and Arthur Owen Wilson & Co. as defendants. The suit then stood Corpening & Co., plaintiffs, v. The Huntsville Belt Line & Monte Sano Railway Co. Code of 1886, § 2691, declares the liberal principles of amendments allowed under our statute.

The Huntsville Belt Line & Monte Sano Railway Company was a private corporation. It was incorporated for the purpose of constructing and operating a railroad with dummy engines, from a point in the city of Huntsville to Monte Sano, a neighboring summer resort, distant less than ten miles. It had a board of directors, number not shown, of whom W. K. P. Wilson was president. Arthur Owen Wilson, another director, was secretary and treasurer, and was also chief engineer. O'Brien, a third director, was assistant engineer. The testimony tends to show that these three constituted the partnership known as Arthur Owen Wilson & Co. A resolution of the board of directors was put in evidence, and is in the following language:

"June 26th 1888.

At a meeting of the board of directors. On motion of S. H. Buck, seconded by Milton Humes, the following resolution was unanimously adopted, to-wit:

Resolved, that the president of this company be, and he is hereby authorized to contract with Arthur Owen Wilson & Company for the construction and equipment of a dummy line of railroad from a point near the depot of the Memphis & Charleston Railroad Company in the city of Huntsville to a point in the vicinity of the Hotel Monte Sano, (as per maps and surveys on file in the office of the company,) and as a consideration for the same that the president of this company be and he is hereby authorized to contract with the said Arthur Owen Wilson & Co. to pay for the construction and equipment of the said road all amounts due on subscriptions to the capital stock of this company heretofore made ; also all the capital stock of this company not heretofore subscribed for. also one hundred and twenty-five thousand dollars of the first mortgage bonds of this company hereafter to be issued, and secured by a mortgage on all its real and personal property, etc."

Arthur Owen Wilson testified that the foregoing resolution was all of the contract he claimed to have been made and concluded between Arthur Owen Wilson & Co. and the Belt Line and Railway Co. for the construction and equipment of the railway.

The real issue of fact on which this case hinged in the Circuit Court was presented as follows : We state the defendant's contention first, because we can thereby more easily make ourselves understood. There was but one severely controverted issue of fact in the case ; and upon that one issue of fact Corpening and Arthur Owen Wilson, the parties to the alleged negotiation, are squarely at issue.

The defendant contends that by the action of the board of directors the contract for building and equipping the railway was let to Arthur Owen Wilson & Co., on the terms expressed in the resolution of the board of directors. That Arthur Owen Wilson & Co. sublet the contract to Danforth & Armstrong, and the written evidence of that contract is in the record. That Danforth & Armstrong then sold out and assigned their contract to Corpening & Co., the latter binding themselves to comply with Danforth & Armstrong's contract—and, by the terms of the agreement, they were to receive the compensation Danforth & Armstrong had agreed to do the work for. The assignment of the contract was to Z. T. Corpening & Co. The testimony up to this point is all one way, and there is no conflict. It is thus shown that according to defendant's contention, the only contract the corporation made for the doing of the work was with Arthur Owen Wilson & Co.; that Arthur Owen Wilson

& Co. sublet the contract to Danforth & Armstrong, and they, by selling their contract to Corpening & Co., sublet it to the latter firm.   On this theory defendant contends that there is no privity of contract between it and Corpening & Co., and that the latter must look to Danforth & Armstrong, and, as the assignees of their sub-contract, to Arthur Owen Wilson & Co., for compensation for any work they may have done.

The plaintiffs do not controvert any of the foregoing facts down to the point where Corpening purchased the contract of Danforth & Armstrong.   They admit their truth. Corpening's version, however, is that he, as an individual, purchased the contract from Danforth & Armstrong; that he then proposed to Smith and Brittain to take them in as partners : that on examining the contract and the grounds, they all concluded they could not and would not undertake it on the terms Danforth & Armstrong had agreed to ; that he then went to Arthur Owen Wilson, and told him the conclusion they had reached, and that they proposed to throw up the contract.   He testified further that Wilson told him to go on and do the work, and that they should be paid.   His testimony was that they did what work they did under this assurance of Wilson, and that they continued to work until about September 20, when they were forced to stop by their inability to collect the estimates for the work they had done. Wilson denied emphatically that he gave this assurance, and testified that he had no authority from the corporation or board of directors to let out the contract ; that he neither did let it out to Corpening & Co., nor attempted to do so. That he tried to encourage them to go on and do the work, and told them if they would do so he had no doubt they would be paid.   This, then, was the issue on which this case was tried.   It devolved on the plaintiffs the necessity of proving to the satisfaction of the jury that Arthur Owen Wilson had authority from the board of directors, express or implied, to let out the contract—not as a sub-letting, but as an original letting—and that he did in fact let it out to them.   This was the main issue of fact before the jury.

A great many exceptions were reserved to the introduction of testimony.   Some of these present the question, how far, and to what extent the acts and declarations of an agent bind the principal ?   The rule is that any act done by an agent within the scope of the authority entrusted to him, and any declaration made by him accompanying and explanatory of such act, is equally binding as if done or spoken by the principal himself.   Admissions or declarations made

by an agent, even though made in reference to a matter entrusted to him, if they do not accompany some act of agency, are not competent testimony against the principal.—3 Brick. Dig. 21 §§ 40-43; *Ib.* 25, §§ 25, 26; *Wailes v. Neal,* 65 Ala. 59; *Henry v. Northern Bank of Ala.* 63 Ala. 527; *Hill v. Helton,* 80 Ala. 528.

Another rule. Acts done and declarations made by one assuming to be agent, do not and can not prove the agency, or the extent of the agent's power, unless they are made known to the principal and in some way ratified by him, after being informed of what had been done, and the character in which it was done. Knowledge of what was done and how done is an indispensable prerequisite to a binding ratification.—1 Amer. & Eng. Encyc. of Law 429, 432, 441; 1 Brick. Dig. 59 §§ 88, 98; *Burns v. Campbell,* 71 Ala. 271; *Herring v. Skaggs,* 73 Ala. 446.

Two other objections to the Circuit Court's rulings have been urged before us with much earnestness. One of the objections is that appellees were allowed to propound leading questions to their own witnesses. The other objection arose as follows : Plaintiffs had closed their testimony in chief. Defendant then introduced a witness, and examined him as to a certain matter relied on in defense. In cross examination plaintiffs interrogated this witness as to matters, in regard to which he had not been examined by the party introducing him. The defendant objected to this, and reserved an exception to the ruling. Under our practice there is nothing in either of these objections. The matter of permitting leading questions to be propounded to one's own witness we confide to the discretion of the presiding judge. 3 Brick. Dig. 405, §§ 6, 7. And we observe the same rule to a large extent in the matter of cross examining witnesses. *Ib.* 444 §§ 582, 587. The rule invoked, though practiced in some jurisdictions, has never found favor with us.

Plaintiffs, against objections and exceptions of defendants, were permitted to prove the value of the work and labor done by them on the railway track. There was no error in this. If there was a right of recovery against any of the defendants, the value of the labor done was a material factor in determining the amount of recovery they were entitled to.

Neither was there error in receiving testimony that one or more of the board of directors of the belt line and railway company saw plaintiffs and their employees at work on the road bed of the corporation. That enquiry was pertinent and material in one aspect of the issue before the jury.

[Huntsville Belt Line & Monte Sano R'y Co. v. Corpening & Co.]

One question to, and answer by the witness T. F. O'Brien were as follows : "Who did he (Arthur Owen Wilson) say would pay for the work?" The answer was, "I judged the company would pay for it." There were separate objections to the question and answer, each was overruled, and a separate exception reserved. It is very clear that the Circuit Court erred in permitting this answer of this witness to go to the jury. It was simply the opinion of the witness on a matter which can not be proved by opinion evidence.

As to the question itself. Substantially the same question was many times asked and objected to. It must be borne in mind that until' all the testimony was put in, Arthur Owen Wilson, as a member of the firm of Arthur Owen Wilson & Co., was one of the defendants to the suit. Being a party to the record, any admission or statement made by him was competent testimony against him, and there was no error in receiving such testimony. True, it was not competent testimony against the other defendants ; but the extent of its pertinency and influence it was the province and duty of the court to explain and limit in the charge to the jury. It became a very different question, however, when the complaint was amended by striking out the names of Arthur Owen Wilson & Co. as defendants. The inquiry was then presented, whether Arthur Owen Wilson was the agent of the belt line and railway company authorized to bind it. Even if he was, his mere admissions and statements could not bind the company. They could do so only when made in connection with, and explanatory of some act of agency he was authorized to do, and did do for the defendant corporation.

Under the principles we have declared, a great many questions and answers allowed on the former trial will become improper on a second trial, now that Arthur Owen Wilson has ceased to be a party to the suit. We need not swell this opinion by particularizing them.

We have said the pivotal inquiries of fact in this case are whether Arthur Owen Wilson made a contract with Corpening & Co., by which he engaged them to do the work, whether in so contracting he assumed to act, and did contract in the name of the corporation, and whether he had authority from the corporate authorities to so contract and bind the corporation to pay them for the work to be done ; or, in the absence of proof that authority to so contract had been previously conferred upon him, Wilson, by the action of the corporation, whether he in fact did so contract with them in the name of the corporation to pay them for the work to be

[Huntsville Belt Line & Monte Sano R'y Co. v. Corpening & Co.]

done by them, whether the corporate authorities had notice that he had so contracted in their name and on their credit, and whether having such notice or knowledge, it permitted the contractors to go and do the work without dissent on the part of the corporation or its authorities. If the work was done under the contract Danforth & Armstrong made with Arthur Owen Wilson & Co., and under Corpening & Co.'s purchase of that contract, then there was no privity of contract between the Huntsvill Belt Line and Monte Sano Railway Co. and Corpening & Co., and the present action can not be maintained against the corporation.—*Wood v. Brewer*, 66 Ala. 570.

In Bishop on Contracts, enlarged edition, § 187, is this language: "Where the express contract supplies all needs, completely covering the transaction, does the law commit the folly of creating the needless? Is there any implied contract? In reason, no." The following authorities shed light on this question, and discuss the rule to be observed when one does labor or expends money for another, either under no contract, or under a contract which is not fully agreed upon in all its parts, and that other accepts and utilizes the payment made, or the benefits of the labor done. They declare, but not uniformly, under what circumstances the law implies, or raises a promise to repay money so paid, or to pay for labor so performed: *Dermott v. Jones*, 2 Wall. 1; *Watchman v. Crook*, 5 Gill. & J. 239; *Adams v. Cosby*, 48 Ind. 153; *Morrison v. Jones*, 6 Bradw. 89; *Ross v. Hardin*, 79 N. Y. 84; *French v. City of Auburn*, 62 Me. 452; *North Providence v. Dyerville Man'f. Co.*, 13 R. I. 45; *Davis v. Breon*, 1 Ariz. 240. See also *Wood v. Brewer, supra; A. G. S. R. R. Co. v. Hill*, 76 Ala. 303.

One sentence of the court's written charge to the jury is in the following language: "If you believe in this case from all the evidence that the chief engineer made a contract with the plaintiff to do this work, and the board of directors, being informed thereof, acquiesced therein and did not dissent therefrom, then you may infer that such chief engineer had authority to make such contract." There was a separate exception to this part of the charge.

One of the contentions in the court below, as we have seen, was that the corporation had made a contract with Arthur Owen Wilson & Co. to completely construct and equip the railway. The resolution of the board of directors was introduced for the purpose of proving such contract was made. It was further contended that after this, Arthur Owen Wilson & Co. sublet a portion of their con-

44-97

[Anderson v. Whittaker & Jeffries.]

tract to Danforth & Armstrong. The written contract of that sub-letting was also in evidence. It was further contended that Corpening & Co. purchased Danforth & Armstrong's contract, and that the work and labor they did were done under that contract. On these asserted premises it was contended that Corpening & Co., if entitled to any compensation, or to any recovery in damages, were not in contractual privity with the Belt Line & Railway Co., but must seek redress against those whose contract they held.

Under varying phases of the controversy as presented in the court below, if Arthur Owen Wilson gave a promise, or made a representation to Corpening & Co. that if they did the work they should be paid, it would not and does not follow as matter of law that he gave that promise, or made that representation as chief engineer of the railway company intending to bind it. . It is possible he made such representation, or gave such promise as a member of Arthur Owen Wilson & Co., intending thereby to bind, and only to bind the partnership.

Construed in reference to the testimony and the issues before the jury, the charge we have copied above is imperfect and faulty in its hypothesis. It should have hypothesized that Wilson gave the assurance, or made the contract in the name of the corporation, and that the directors, being informed that such contract was made in the name of the corporation, acquiesced therein and did not dissent therefrom. This would certainly entitle plaintiffs to a verdict.

For the errors pointed out, the judgment of the Circuit Court is reversed, and the cause remanded.