# Alabama Great Southern Railroad Co. v. Moore & Stephens.

### *Action of Assumpsit.*

1. *Implied promise; when notice to agent is not notice to principal.*—Where the plaintiffs had been in the habit of furnishing cross-ties, delivered on the right of way of the defendant railroad company, to one S., from whom alone the defendant, under an express contract, bought its ties, the defendant would not be liable to the plaintiffs for a lot of ties so left with others belonging to S., and for which the defendant paid S. in full, in the absence of an express contract with the plaintiffs or notice by them to the defendant that the ties were not S's., and not to pay him for them; and notice to the defendant's

[Alabama Great Southern Railroad Co. v. Moore & Stephens.]

cross-tie inspector, whose authority extended only to making the inspection, and reporting the same, would not be notice to the defendant.

2. *Same; special agent.*—An implied promise can not arise from the conduct of a special agent with limited powers, who had no authority to make an express promise.

3. *Proof of value.*—In an action on an alleged implied contract to pay for cross-ties belonging to the plaintiffs, which were used by the defendant, what the defendant agreed to pay another person for cross-ties purchased from him, under a special contract, is not proof of the value of plaintiff's ties.

APPEAL from the Circuit Court of St. Clair.
Tried before the HON. GEORGE E. BREWER.

The defendant duly excepted to the action of the court in overruling the objections, stated in the opinion, to the testimony of the plaintiff Stephens as to his conversation with Osborne; and also excepted to the refusal of the court to give the following, among other written charges requested by it: "The court charges the jury that if they believe the evidence they should find a verdict for the defendant."

GOODHUE & SIBERT, for appellant, cited *Lankford v. Green*, 52 Ala. 104; *Shumake v. Nelms*, 25 Ala. 135; *Whitney v. Sullivan*, 7 Mass. 107; *Huntsville Belt Line v. Corpening*, 97 Ala. 689; *Reid v. Bank of Mobile*, 70 Ala. 210; *Louisville & Nashville R. Co. v. Carl*, 91 Ala. 272; *Frenkel v. Hudson*, 82 Ala. 158.

INZER & GREENE, *contra*, cited 1 Brick. Dig. p. 63, § 156; 3 *Id.* p. 25, § 99.

HARALSON, J.—This case was tried on the second and fourth counts in the complaint, the first and third having been excluded from consideration by rulings of the court in favor of appellant. The second makes claim for $150, for 493 railroad ties, of the value of twenty-eight cents each, and for 89 other railroad ties of the value of fourteen cents each, "sold by plaintiff to defendant in the month of October, 1893;" and the fourth makes claim for a like sum of money, due by account on the ...... day of October, 1893, "for and on account of railroad ties, the property of plaintiffs, appropriated by defendant to its use, on the ...... day

[Alabama Great Southern Railroad Co. v Moore & Stephens.]

of October, 1893, and for which ties the defendant prom-
ised and agreed to pay plaintiffs.'' The cause was tried
on the plea of the general issue, and a verdict was ren-
dered against the defendant for $170.20.

The undisputed facts in the case are that for several
years prior to July, 1893, the plaintiffs had sold cross-
ties to one Scott, who sold them to defendant; and, ac-
cording to their course of dealing, plaintiffs placed the
ties for Scott on the right of way of the defendant com-
pany, marking them with their initials, "M. & S."
One Osborne was employed by the defendant to inspect
and classify all ties it bought. Scott, under his contract
with the plaintiffs, paid 28 cents, each, for first-class,
and 14 for second-class ties, after they were placed on
the right of way and inspected, and these ties, after
they had been inspected and classified, were used by the
defendant; that Scott's contract to furnish ties to defen-
dant lasted till December, 1893, and the defendant bought
all its ties from said Scott under its contract with him;
that the ties in controversy were purchased by defendant
from Scott, under its contract with him, just as it had
done previously, and defendant paid him in full for
them, before the commencement of this suit; that the
defendant had no contract with plaintiffs to furnish to
it any ties; that Osborne's duties were to inspect and
classify the ties he found on the right of way, and make
report of the same to the defendant company, and that
it paid Scott for them on the basis of his classification;
that in October, 1893, under orders from his superior,
Osborne inspected 25,000 ties under Scott's contract
with defendant, and had no authority to inspect any
others; that in October, 1893, under the instructions he
received, he inspected and classified those in controversy,
and made his report to his superior, and that all the
authority he had was in the matter of inspecting and
classifying ties. It was further shown that Moore, one
of the plaintiffs, wrote to Scott asking for pay for ties
furnished in July, and also wrote to him several letters
making inquiries about those furnished in October, the
subject of this suit. Thus far the evidence is without
conflict. The plaintiff Stephens, when examined in
behalf of plaintiffs, was asked,—''Did you have any
conversation, in October, with Osborne about the ties on
the right of way, marked M. & S., as to ownership of

same?'' The defendant objected, on the ground that Osborne was only a cross-tie inspector, and any communication with him could not bind the company. But the court overruled the objection, and allowed him to answer, that he told Osborne that he had no contract with Scott, and he looked to the defendant to pay for the ties; that he did not want Scott to get the ties, for he was behind with others, and would not pay plaintiffs. He admitted, on cross-examination, that this conversation occurred on the afternoon of the day, after Osborne had inspected the ties, and that Osborne told him he had orders from his superior to classify ties, and that he did not know whether Scott had a contract with the company or not, and that it was not his business to find out whose ties they were. Defendant then renewed its motion to exclude this conversation, on the same grounds as interposed to the original question, and further, on the ground, that no such relation had been shown to exist between Osborne and the defendant as that notice to Osborne would be notice to defendant; but the court overruled the motion. In this ruling there was error. It was never shown that Osborne was anything more than a cross-tie inspector for the company, and it was shown that, further than this, he had no agency or authority. With the inspection and the report of his examination to the superintendent, his authority and duties ended. Notice to him was no notice to the defendant. If plaintiffs did not intend that the company should pay Scott, from whom they had been buying all their ties, and to whom plaintiffs had been furnishing them to be sold to the company, they should have notified the company that the ties were not Scott's, and not to pay him for them. But this they did not do; and, after the delivery of the July ties,—sued for in this action also,—and the October deliveries, from the letters they wrote to Scott, making inquiries about the payment for the same, they seem to have recognized Scott as the party owing them for the ties. The defendant paid for those in suit in full, without any notification, so far as appears, that plaintiffs had, or would make, any claim against it for them.

Under the evidence, the plaintiffs have failed to show any express contract with defendant, by which it became liable in any way for these ties. The sole contention for

[McAnally v. Hawkins Lumber Co.]

a recovery is based on an alleged implied contract to pay for them,—implied alone from the fact that the ties were used by the defendant. The implied promise has no foundation outside the acts of Osborne, and it is very clear that an implied promise can not arise from the conduct of a special agent with limited powers, who had no authority to make an express promise. And, besides, an implied promise to pay plaintiffs for the ties can not be raised in the face of an express promise to Scott, for the same consideration.—*Lankford v. Green*, 52 Ala. 104; *Shoemake v. Nelms*, 25 Ala. 135; *Huntsville Belt Line v. Corpening*, 97 Ala. 689.

It should be added, there was no proof of the value of the ties. What the defendant agreed to pay Scott for those he sold it, under special contract, is not proof of value in this case.

The general charge as requested for defendant should have been given.

Other questions arising on the introduction of evidence, exceptions to which appear to have been well taken, need not be considered.

Reversed and remanded.