(104 So. 228)

## TEAGUE v. TENNESSEE VALLEY BANK.
### (8 Div. 679.)

(Supreme Court of Alabama.    April 16, 1925.)

1. **Money paid ⊜⇒10—Refusal of affirmative instruction for drawee, whose conduct had caused bank to pay draft drawn on him after time for protest, held not error.**

In action by collecting bank against drawee of sight draft, whose conduct had prevented bank from protesting draft, which it had paid, in which evidence as to transactions between bank and drawee in regard to draft was conflicting, refusal of affirmative instruction for defendant was not error.

2. **Money paid ⊜⇒3—Fact that demand draft was not accepted held not to prevent recovery in assumpsit against drawee, whose conduct prevented collecting bank from protesting draft.**

Under Code 1923, § 9163, there was no duty on collecting bank to present for acceptance demand draft sent for collection, and fact that it was not accepted does not prevent recovery in assumpsit against drawee for conduct causing collecting bank to fail to protest draft, so as to bind drawer under section 9087.

3. **Money paid ⊜⇒1—Loss to collecting bank which paid draft caused by conduct of drawee held sufficient consideration to support action of assumpsit.**

Where conduct of drawee caused collecting bank to fail to protest sight draft, so as to bind drawer under Code 1923, § 9087, and collecting bank paid draft, its loss was sufficient consideration to support action of assumpsit against drawee.

4. **Money paid ⊜⇒9—Draft paid by collecting bank, because of conduct of drawee causing it to fail to protest it, held proper evidence in action against drawee.**

In action by collecting bank against drawee of sight draft, for conduct causing bank to fail to protest draft, so as to make drawer liable under Code 1923, § 9087, draft was proper evidence, not as cause of action, but as part of transaction involved.

5. **Money paid ⊜⇒9—Evidence that drawee of draft for cotton, sued by bank paying draft, had claim against drawer for shortage on cotton bought before properly disallowed.**

In action by collecting bank against drawee of sight draft, whose conduct caused bank to fail to protest draft, so as to render drawer liable under Code 1923, § 9087, evidence that drawee at time draft was drawn for cotton had claim for shortage on cotton bought before from drawer, was properly disallowed, in view of evidence showing that drawee by promises and assurances to bank waived question of state of accounts.

6. **Evidence ⊜⇒271(1)—Question to witness calling for self-serving declarations of defendant properly rejected.**

In action by collecting bank against drawee of sight draft, whose conduct caused bank to fail to protest draft for nonpayment, so as to

render drawer liable under Code 1923, § 9087, question to defendant's brother touching claims of defendant, calling for self-serving declarations of defendant, was properly rejected.

**7. Money paid ⊙═⊃10—Instruction tending to limit inquiry as to first interview between parties held misleading in view of evidence as to other interviews.**

In action by collecting cashier against drawee of sight draft, whose conduct caused bank to fail to protest draft, which bank paid, requested charge that if defendant refused to accept draft on first presentation and instructed bank to protest it, and if bank did not within 24-hour period, to find for defendant, was misleading, as tending to limit inquiry to first interview between plaintiff and defendant, when evidence tended to show two or more interviews within 24-hour period mentioned.

Appeal from Circuit Court, Lauderdale County; Charles P. Almon, Judge.

Action in assumpsit by the Tennessee Valley Bank against W. R. Teague. Judgment for plaintiff, and defendant appeals. Affirmed.

Charge 5, refused to defendant, is as follows:

"(5) I charge you gentlemen of the jury, that if you believe from the evidence, that Mr. Teague, the defendant, refused to accept the draft when it was first presented to him by the bank, and that at that time he, Teague, instructed the bank to protest the draft, and if you further believe that the bank refused or neglected to protest the draft as instructed, for a period of 24 hours, then you should find for the defendant. And this is true regardless of any statement that the defendant may have afterwards made to Mr. Hackworth, Mr. Brown, or any other officer of the bank.

S. W. Frierson, A. A. Williams, and S. G. Salter, all of Florence, for appellant.

The affirmative charge and charge 5 should have been given at defendant's request. Kanjutzky v. T. C. I. Co., 154 Ala. 316, 45 So. 676; Tabler v. Sheffield Land Co., 87 Ala. 305, 6 So. 196; Shannon & Co. v. McElroy, 3 Ala. App. 519, 57 So. 118.

Bradshaw & Barnett, of Florence, for appellee.

Recovery by plaintiff was proper in this case. Evans v. Billingsley's Adm'r, 32 Ala. 395; Beard v. Horton, 86 Ala. 202, 5 So. 207; 27 Cyc. 835.

BOULDIN, J. This is an action on the common counts. The plaintiff's case rests upon evidence tending to support the following state of facts:

[1] During the cotton season of 1923, W. R. Teague, the defendant, a cotton dealer at Florence, Ala., was buying cotton from Remke Seed & Grain Company, of Lawrenceburg, Tenn. The cotton was delivered at Florence by truck, and payment obtained through banking channels by draft accompanied by invoice of the cotton.

Accordingly, on November 30th, defendant purchased 28 bales of cotton, and Remke Seed & Grain Company drew a sight draft on defendant for the agreed price, payable to order of First National Bank of Lawrenceburg, Tenn., with invoice of cotton attached. The payee bank indorsed the draft, "Pay to order of any bank or banker," and sent it to Tennessee Valley Bank, Florence, Ala., for collection, subject to protest. The draft was presented for payment by E. C. Brown, teller of Tennessee Valley Bank. Defendant had on deposit in that bank at the time $3,800, some $800 less than the amount of the draft. He then indorsed a check for some $2,500, drawn by a third party on another bank, payable to defendant, and turned it over to Brown, with a request to hold it until some adjustment was made with the drawer of the check. Brown informed defendant the draft was subject to protest, and defendant replied:

"Well; I don't want it to go back; I want to pay it. * * * Here is this check of Striplin's which I have indorsed, and that, with my balance, you can see for yourself you have got this on paper and there is no danger of losing it."

Brown again presented the draft on the following day, and from day to day for a week, and was requested to hold the draft awaiting an opportunity to see Striplin. Finally defendant notified Brown he would not pay the draft. Meantime, defendant's balance on deposit in plaintiff bank was withdrawn, and the Striplin check turned down by the bank on which it was drawn. Brown notified the manager of the bank, who took it up with defendant, and payment was refused. The draft not having been protested, and the time for protest having passed, the Tennessee Valley Bank, in recognition of its liability as a collecting bank, paid the draft, and sues for the amount so paid.

There is conflict in the evidence touching what passed between defendant and Brown, but the issues thereon were for the jury. The question of first moment presented is whether plaintiff's evidence makes a case of liability on the common counts.

In Evans v. Billingsley, 32 Ala. 395, 401, this court quoted approvingly the following statement of the law in Cross v. Cheshire, 7 Exch. 43:

"If a person who owes a debt to A., by any contrivance causes B. to pay it, the action for money paid will lie to recover back the amount, and the machinery by which the mischief was brought about is utterly immaterial."

Commenting on Evans v. Billingsley, supra, this court said in Beard v. Horton, 86 Ala. 202, 204, 5 So. 207, 208:

---

⊙═⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"The principle on which the case last cited rests is, that where a person owes a debt, and by any trick, deceit or contrivance, causes another to pay it, the party paying it may maintain an action against such person for money paid, and the means used to bring about such payment are immaterial."

This latter case involved failure of duty on the part of a bank in collecting a draft. The teller had by mistake accepted payment only in part and surrendered the draft as fully paid. His bank made good the difference; the teller then satisfied his bank, and brought suit for the money so paid. The chief difference of fact between that and the case at bar is that in the one the loss grew out of failure to get full payment, and in the other out of failure to protest for nonpayment.

In course of the opinion in Beard v. Horton, supra, it was further said:

"A party compelled, in order to preserve his rights, to pay the debt of another, may recover the amount so paid, from the person whose duty it was to have paid the debt. Walker v. Smith, 28 Ala. 569. Also, where a person is compelled by operation of law to pay a debt, which another in equity and good conscience ought to pay, he may recover the amount of such person. Ticonic Bank v. Smiley, 27 Me. 225."

The principle announced in these cases we consider sound in law as in morals, and applicable to the case at bar. There was no error in refusing the affirmative instruction for defendant.

[2, 3] That the draft was never accepted is not in point here. It was a demand draft. There was no duty to present for acceptance. Code 1923, § 9163. The duty was to present it for payment, and protest it for nonpayment. The Bank's liability grew out of failure to protest so as to bind the drawer of the draft. Code 1923, § 9087. The defendant's liability to the Bank grew out of defendant's promises, requests, and assurances upon the faith of which the Bank took upon itself the risk of incurring its liability. There was no want of consideration to support an action of assumpsit. The loss suffered by plaintiff as a result of defendant's conduct is sufficient.

[4] The draft was proper evidence, not as the cause of action, but as a part of the transaction involved. Its existence was the occasion of the duties undertaken by the Bank, the basis of its liability, as well as the subject of the negotiations which caused the Bank's loss.

[5] Evidence that defendant at the time had a claim for shortage on cotton theretofore bought from the drawer was properly disallowed. Plaintiff's evidence was that defendant admitted getting the cotton for which this draft was drawn. This was not denied. If plaintiff's evidence be true, the defendant, by his promises and assurances to the Bank, waived any question of the state of accounts on the other matter; and under the principles above announced, the Bank was justified in acting on the belief that the debt was due.

[6] The question to W. G. Teague, defendant's brother, touching the claims of defendant as between himself and the seller, called for self-serving declarations of defendant, and was properly rejected.

[7] Charge No. 5, refused to defendant, was at least misleading in tending to limit the inquiry to the first interview between Brown and defendant. Plaintiff's evidence tended to show two or more interviews within the 24 hour period mentioned in the charge. The later statements to Hackworth could be looked to by the jury as corroborative of Brown's version of the previous transactions.

Affirmed

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.