20 So.2d 769

## COWAN v. MARTIN & HUCKABY et al.
### 8 Div. 291.

Supreme Court of Alabama.
Feb. 1, 1945.

M. F. Lusk, of Guntersville, for appellant.

Claud D. Scruggs, of Guntersville, for appellees.

THOMAS, Justice.

The suit at law against a partnership and the members thereof, by agreement of the parties, was transferred to the equity side of the docket of the circuit court.

The effect of the recast pleading, after transfer, is that appellant rented from respondents a certain hospital known as Tennessee Valley Infirmary and was to pay them $150 per month, and respondents were to collect and remit to her the charges for hospital expenses rendered by her to the several patients of the respondents; that she had already paid all of the rents except $300 due them; that they had admitted that they had collected $331.50 for the complainant from their patients which they had not paid, and also alleged that in addition to this sum they had actually collected $562 more. She asked that her rents be offset and a judgment on an accounting rendered for the balance.

Respondents filed an answer denying they had agreed to collect her rents or be-

come liable therefor. They admitted that they had leased her the building with the exception of Dr. Martin's office, the X-ray room and equipment, and Dr. Martin's office and surgical equipment, and that she agreed to pay $150 per month for the same, and she was to fix and collect her own charges and keep up the hospital and furnish everything else in the way of supplies, including meals and nurses for all patients; that each patient admitted was to pay her for her charges, and the doctor bills, and surgery fees were to be separately collected, and assessed against each patient, and doctors were to collect their own fees; that very often patients were brought to the hospital who had no money, and in order to collect her fees and assist the complainant in collecting her charges, she furnished them with a list of her charges, where the patients had no money, and a note was taken, payable to the hospital and the doctor or to the doctors, or to the hospital, as the case may be; that the notes were taken to the bank and endorsed by the doctors with recourse and discounted at the bank. These notes included the doctor's fees and hospital expenses due to the complainant. This was all known by complainant and acquiesced in by her and she received her money for her services from the proceeds obtained on the notes at the bank in each instance. Most of the notes thus taken were paid by the patients at the bank, but a large number of them, totaling several hundred dollars, were not paid by the patients, but Dr. Martin and Dr. Huckaby had to pay them off, and take the patients' notes up at the bank on their endorsement; and that they took up $1446.-53 worth of such notes, which respective amount had formerly been paid by them to the complainant from the moneys received from the bank, and they lost the remainder of these notes. These matters were handled in this manner to accommodate complainant and help her get her hospital bills while they were thus getting their surgical fees and bills for medical treatment.

After the testimony had been practically completed, complainant amended her bill, alleging respondents had admitted collecting $331.50 for complainant, and they had actually collected an additional $727.50. Respondents thereupon amended their answers setting up that they had thus discounted said notes at the bank and listed the name of each patient who had made a note, the amount that had been charged back to Drs. Martin and Huckaby by the bank, and the amount received by Cordelia Wooten Cowan from the note discounted, and the net amount paid to her and charged back to the doctors. This last sum was $1547.53, which they paid the bank for moneys received by her from the notes so discounted. They later made another amendment, admitting since the filing of the first amendment they had collected certain other notes, her part amounting to $100, which should go as a credit on the $1547.53. Some of these notes were made only for fees due by patients to the complainant and handled for her in this manner at the bank. The notes were all offered in evidence.

The agreement of counsel is to the effect that the matters set forth in the amended pleading should be treated as testified to by the respective parties. It was further agreed in open court that:

"It is stipulated that the notes listed in the interrogatories except such as *has* [have] been admitted as having been collected since are yet in the hands of defendants' attorney. No claim is made as against them by complainant and these notes will remain in the hands of defendants' attorney for collection. * * * [Italics and brackets supplied.]

"It is hereby stipulated and agreed in open Court that all the testimony and exhibits that have been taken and filed in this cause will be treated as having been taken under decree of reference and the matter is now submitted to the register for his findings and that the register may report his findings to the Judge after allowing said report to lie over for five days and that this stipulation may be validated by the Court in its decree and that on expiration of ten days from the date of the register's report, he will forward his report and all the file to the court for final decree by the Court, as if it had been submitted to the register on decretal order."

The register, under these stipulations and on the testimony taken before him, ascertained in his report that Respondents had collected $1019.50, which they had not paid to complainant; that she owed them $300 for rents, and they had paid the bank for moneys she had received on notes discounted at the bank $1447.53, which they had to repay to the bank, and she yet owed respondents $728.53; that the costs were $212.60. Exceptions were filed by both parties to the register's report and the court on May 23, 1944, rendered a decree con-

firming this report of the register as to the findings of fact, rendering judgment against appellant for $728.53, and holding that the arrangements between complainant and respondents, whereby hospital expenses were from time to time included in notes taken by the respondents for complainant's fees, was a wholly gratuitous arrangement, and that the law will raise or imply a promise on the part of the complainant to repay the respondents such amounts as they have paid her, but which have been charged back to and paid by them to the bank, and that she was due to pay this sum as a matter of right, good conscience, and justice, on this equitable action for accounting.

The assignments of error supporting this appeal are to the effect that there was error in overruling complainant's demurrer to the amended cross bill; exceptions to the register's report as indicated; in holding that the law raised or implied a promise on the part of complainant to repay respondents such amounts as they had paid her, but which have been charged back to and paid by them to the bank; and in decreeing that respondents have and recover of complainant the sum of $728.53 and one-half of the costs, and in awarding the judgment in that amount for the respondents.

The amended answer and demurrer and amended cross bill and supplemental answer and amendment to the cross bill for the respondents will appear in the statement of facts.

We have carefully considered this pleading, and are of opinion and hold that, there was no error committed in overruling the demurrer to the cross bill.

In 17 Corpus Juris Secundum, Contracts, § 4, p. 320, the questions of what facts will establish a true implied contract are considered from the general authorities, and are to the effect that a contract implied in fact is a true contract, the agreement of the parties being inferred from the circumstances, showing a mutual intention to so contract. Such implication does not arise contrary to law or the expressed declarations of the parties. Contracts implied in law are quasi or constructive contracts, and are distinguished in that such contracts do not rest on assent of the parties, but, according to circumstances, might exist, regardless of such assent. The decisions of this court cited are to the effect that where a person, who is a stranger to a contract deliberately enters into rela-

tions with some of the parties which are consistent only with an adoption of such contract, or so acts as to lead such party to believe that he has made the contract his own, he will not be permitted thereafter to repudiate it. Wilkes v. Stacy Williams Co., Inc., 235 Ala. 343, 179 So. 245, 248. In that decision is the observation that, "A contract created by law is one which is imposed without regard to the assent of the parties to be bound, on the ground that it is dictated by reason and justice", citing 13 Corpus Juris 244. Robinson Lumber Co. v. Sager, 199 Ala. 675, 75 So. 309; Alabama Great Southern R. Co. v. Moore, 109 Ala. 393, 19 So. 804.

The subject before us was considered in American Mutual Liability Ins. Co. v. McDiarmid, 211 Ala. 127, 99 So. 849, 851, and on the early authorities there cited, it was said that the law will not imply a promise against the express declarations of the party to be charged, made at the time of the supposed undertaking, for the reason that all contracts must be based on the "mutual agreement of the parties." It is further observed that, "The difference between an expressed and an implied contract is merely in the mode of proof, the elements being the same, and where mutual agreement is contradicted by the statements of either party at the time, there being no expressed agreement, there can be no implication of contractual undertaking by that party."

In Teague v. Tennessee Valley Bank, 213 Ala. 21, 104 So. 228, the opinion in Beard v. Horton, 86 Ala. 202, 204, 5 So. 207, 208, is quoted to the effect that: "A party compelled, in order to preserve his rights, to pay the debt of another, may recover the amount so paid, from the person whose duty it was to have paid the debt. * * * Also, where a person is compelled, by operation of law, to pay a debt, which another in equity and good conscience ought to pay, he may recover the amount of such person." And as to this Mr. Justice Bouldin observed: "The principle announced in these cases we consider sound in law as in morals, and applicable to the case at bar." [213 Ala. 21, 104 So. 230]

The foregoing authorities support the decree of the trial court on the informal pleadings in equity.

The testimony of John G. Winston is to the effect that his wife was in the Tennessee Valley Infirmary in November, 1938, and Dr. Martin was her doctor; that

he arranged for her care and services with that doctor *and not with Miss Wooten;* that just before his wife left the hospital he had a conversation with Dr. Martin and made a note for the whole bill of $290; that he paid Dr. Martin $50 and was making no arrangements to make further payments on his note for the reason that he had turned over a pair of mules to the bank, pursuant to due instructions, and they gave him a receipt for $225, making his total payment of $275; that his note was placed with the bank and the mules delivered to the bank's agent in payment of his note; and that this was two years ago in October. The fact that the bank did not get the money for the sale of the two mules delivered by Mr. Winston in payment of his note was a matter between Dr. Martin and the bank, and not between this complainant and Dr. Martin.

Complainant-appellant was required to litigate to this court to ascertain what credit she should be given on her debt to appellees for her interest in the Winston Account. We are of opinion that error intervened on the reference as to this item, and that appellant is entitled to due credit for her interest in said account on the debt ascertained to be due to appellees by the lower court. The costs of this appeal will be taxed against appellees Martin and Huckaby.

The decree of the circuit court is reversed and remanded.

Reversed and remanded.

GARDNER, C. J., and FOSTER and STAKELY, JJ., concur.