### TICONIC BANK *versus* DAVID SMILEY.

Where the plaintiff by operation of law is compelled to pay a debt, which in equity and good conscience the defendant should have kept from being so claimed and paid, an action may be maintained to recover of the defendant the amount so paid.

If a note be indorsed, after it has become overdue, thus — "indorser not holden, D. S." the indorser is nevertheless, liable therefor, if a payment has been made upon the note, or a set-off can be claimed, when the note exhibits no indication of them, and the indorser leaves the indorsee in entire ignorance of any thing of the kind.

THE parties agreed upon a statement of facts.

This is an action of assumpsit. A copy of the note which is the subject matter of this suit is to be made a part of this case with the indorsement thereon.

In the fall of 1837, one Thomas Smiley took the said note of the defendant, and lodged it with the Ticonic Bank as collateral security for an execution, which the bank then held against him, the said Thomas Smiley. At this time the note was not indorsed. Within a few days afterwards the attorney of the bank called on David Smiley, (the defendant,) to indorse it, and told him that T. Smiley had left the note with him as collateral security for an execution in favor of the bank; the defendant then said he would do so; and also said he had no doubt the note was good, but that he would not be holden on it. — Whereupon the attorney of the bank told him to indorse it as he pleased, and he indorsed it as the note shows.

Thomas Smiley never paid any thing to the defendant for the note, neither did the bank pay defendant any thing for his indorsement.

If admissible, it is agreed that Thomas Smiley procured the

note for the purpose of getting an extension of payment on the execution aforesaid, which the bank then held against him as aforesaid. The bank gave Thomas Smiley an extension of the time of payment on said execution, on said note being left with them as collateral security, as aforesaid, and agreed to wait on him till said note should be collected.

Thomas Smiley borrowed the note of defendant, and at the time told him that he wished it to turn out to the plaintiffs as collateral security, and that they were pressing him for payment.

In 1842, D. Smiley called on T. Smiley and asked him when he could pay him the amount of the note or a part of it, but no part of it has been paid.

Thomas Smiley has obtained his discharge in bankruptcy, and put the amount of said note in his schedule as a debt due from him to D. Smiley. The note aforesaid was put in suit by the plaintiffs at the D. C. Aug. Term, 1840, and the said Homans appeared at that term and filed an account in set-off against D. Smiley, and defended the action. The action was afterwards referred by rule of said Court, without the knowledge or assent of D. Smiley. The referee notified the parties and heard them. D. Smiley was notified by the attorney of the bank, that an account in set-off was filed in said action, and was present at said hearing before the referee, as a witness. The referee allowed fifty-one dollars and eight cents of said account in set-off, and deducted the same out of the amount due on said note, and made his report accordingly in favor of the bank, for the balance over and above the amount so allowed in set-off, to the D. C. Dec. Term, 1842, and said report was accepted by said Court, and judgment thereon rendered for the amount of said award, and execution issued thereon.

It is to recover the amount thus allowed in set-off that this action is brought, and it is agreed that the Court shall enter such judgment in this case as the foregoing facts will warrant.

The following is a copy of the note : —

" $222,64.       Vassalboro', Nov. 5, 1836.

" For value received of David Smiley I promise to pay him

or his order, two hundred twenty-two dollars and sixty-four cents on demand and interest. " Samuel Homans."

The indorsement was in these words : —

" Endorser not holden — David Smiley."

*Noyes,* for the plaintiffs, said that the effect of the indorsement of the defendant was to pass the legal property in the note to the plaintiffs. He did not intend to guaranty the ability of the signer to pay the note, but to pass the title to it, and to guaranty that it was a good note against the signer, if he was able to pay, for the apparent amount thereof. It was equivalent to representing or affirming, that if it could not be collected by reason of a set-off or payment by the signer, that the defendant would make it good to the bank. *Lobdell* v. *Baker,* 1 Metc. 193 and 3 Metc. 469.

The giving delay to Thomas Smiley on the execution, was a sufficient consideration for the transfer of the note.

This case is analogous to that class of cases where one man receives a counterfeit bank bill or a forged note, where the receiver may recover the amount. 6 Mass. R. 181 ; 5 Taunt. 488 ; 2 Johns. R. 455. The vendor of any article, if he is in possession of it, is always understood as warranting the title. 1 Metc. 547.

Both the bank and Thomas Smiley were ignorant that there was any set-off against the note, and the defendant did not inform them, that there was.

If the note was delivered by the defendant to Thomas Smiley without consideration, and as an accommodation note, he is equally liable, as to third persons, as if the full amount had been paid him. Chitty on Bills, 91 ; 12 Pick. 548.

As the indorsement was made without an express warranty, the defendant may not be liable by reason of the inability of the signer ; but if there is any latent defect or secret taint which prevents recovering a judgment against the debtor, he is responsible in the same manner, as in the case of the sale of a specific article.

*Lancaster,* for the defendant, made these points : —

1. There can be no implied promise in this case, and it is

not pretended that there was an express one, because there was no privity between the bank and the defendant.

The note had become the property of the bank prior to the indorsement. The contract was between the plaintiffs and Thomas Smiley, and the indorsement was made as a mere matter of convenience. There was no contract whatever between the parties to this suit. It is denied that there was any implied promise whatever, but if any, it was to Thomas Smiley, and not to the bank. If there was a guaranty, and by suitable words, it was not transferrable to the bank. 21 Pick. 140 ; Chitty on Bills, 250 ; Story on Notes, § 484.

2. Even if a promise of any description can be implied it is without consideration, and therefore void. Nothing was paid for the note by Thomas Smiley to the defendant, and at the time of the indorsement, or afterwards, there was not only no consideration as to the defendant, but none whatever even as to Thomas Smiley. The plaintiffs do not show, that they agreed to give any indulgence to Thomas Smiley at the time of the indorsement. The defendant, too, was an entire stranger to any agreement between the bank and Thomas Smiley.

3. There is no liability whatever of the defendant under such an indorsement as this. *Rice* v. *Stearns*, 3 Mass. R. 225 ; *Parker* v. *Hanson*, 7 Mass. R. 470 ; 7 Cranch, 159 ; 7 Taunt. 163.

The opinion of the Court was drawn up by

WHITMAN C. J. — This being an action of assumpsit, to maintain it, there must be evidence of a promise, either express or implied. It is not pretended that there was any express promise. Was there an implied one? The defendant was the holder of a note of hand, made to him by one Homans, and lent it to Thomas Smiley, in order that he might pledge it to the plaintiffs, and thereby obtain delay of payment for a debt he owed them ; and he having deposited it for that purpose, before it had been indorsed by the defendant, an agent of the plaintiffs called on him to indorse it ; and he thereupon put upon the back of the note, " indorser not

Ticonic Bank *v.* Smiley.

holden, David Smiley;" at the same time remarking, he had no doubt the note was good; and he was then aware of the object of Thomas in putting the note into the hands of the plaintiffs. It appears that, at the same time, Homans had an account with the defendant, on which there was a balance of $51,80 due from the latter, which, as the note had then been due for a long time, it would be the right of the maker to have set off, as in payment of it, *pro tanto*, in whose ever hands it might be found; and this right he availed himself of when sued by the plaintiffs. This balance, it is insisted, under these circumstances, that the defendant must be considered as having impliedly promised to pay to the plaintiffs.

If the defendant is liable for the amount claimed upon the ground of an implied promise, it must be because he has received that amount for the plaintiffs, or because they have paid that amount for him. There is no other possible ground upon which such a promise can be raised. Now, has he received any sum of money for them? It does not appear that he had ever received any sum whatever, expressly in payment of the note. When, therefore, he received the balance due on the account he could not have received it for the plaintiffs. But, by the operation of law, the plaintiffs have been compelled, in effect, to pay a debt due from him. The note was transferred to the plaintiffs as being wholly due. Both parties must so have understood it; and so in fact it was; but the maker had a balance of an account against the defendant, constituting a debt due by the latter to the former. This, at the time the plaintiffs took the note, and when the defendant indorsed it, was unknown to them. If the defendant was aware of it, he did not acquaint them with the fact; and from his conduct we must presume it did not occur to him. The plaintiffs, not being apprised of any such claim in set-off, were entitled to find the note free from any such claim; but by operation of law were, nevertheless, compelled to pay a debt, which in equity and good conscience the defendant should have kept from being so claimed and paid. He therefore may be consid-

ered, as having in effect, requested, or, perhaps more properly, as having compelled the plaintiffs to pay the amount claimed.

The mode in which the defendant indorsed the note exonerates him, only, from being liable in the case of the avoidance or inability of the maker; and is no bar to a claim like the one here set up. Such indorsements are very common, and the extent of the meaning of them, is well understood and defined. It is never understood, in such cases, if payments have been made, or if set-offs can be claimed, when the note exhibits no indication of them, and the indorser leaves the indorsee in entire ignorance of any thing of the kind, that the indorser is free from responsibility.

*Defendant defaulted.*