Town of Milwaukee, Respondent, vs. Village of Whitefish Bay, Appellant.

*February 3 — February 27, 1900.*

*Taxation: Failure to collect: Charging town for taxes of village: Voluntary payment.*

A village had for some years collected taxes independently of the town within whose limits it was situated. The separate property statements of the town and village clerks being before the county board, and a doubt having arisen as to whether the village had been legally incorporated, the assessment of relative values was made separately for "that part of the town not included in the village " and "that part of the town included in the village," and the state and county taxes were apportioned accordingly. The county clerk refused to deliver to the village clerk any statement of the taxes so apportioned to it, but attempted to deliver the same to the town clerk, and the result was that the village paid no part of said taxes for that year, nor were the same paid by the town. In the following year the county board charged back the said taxes to the town as an arrearage, with the penalty prescribed by sec. 1163, R. S. 1878, and the amount thereof was certified to the town clerk, who carried it into the tax roll, and it was collected and paid by the town. In an action by the town against the village to recover the amount so paid, it is *held* that the county board had no authority to charge the arrearage of the village to the town, and, the village not having requested the town to pay it, the payment was purely voluntary and there can be no recovery.

Appeal from an order of the superior court of Milwaukee county: J. C. Ludwig, Judge. *Reversed.*

*H. K. Curtis*, for the appellant.

For the respondent there was a brief by *Timlin, Glicksman & Conway*, and oral argument by *E. A. Conway*.

BARDEEN, J.  This case comes up on an appeal from an order overruling a demurrer to the complaint. The basis of the plaintiff's alleged cause of action may be stated as follows: The plaintiff is a duly organized town. The defendant is a village situated within the limits of said town, incorporated under ch. 391, Laws of 1887, in 1892. After its organization, it elected officers, exercised the power and authority of a village corporation as prescribed by law, and collected its taxes independently of the town from that time until the present. About the fourth Monday in August, 1896, the town clerk made a detailed statement of the several items prescribed by secs. 1050, 1066, R. S. 1878, and duly certified the same to the county clerk, but such statement covered none of the real or personal property of the village. About the same time the village clerk made a similar certification as to the property of the village. These statements were laid before the county board, and the usual assessment of relative values of property in the county was made by the board. About that time it began to be rumored that certain villages of the state incorporated under ch. 40 of the statutes were illegal, so the board made an assessment of the town under the name of "that part of the town of *Milwaukee* not included in the village of *Whitefish Bay*," and of the village under the name of "that part of the town of *Milwaukee* included in the village of *Whitefish Bay*." The board thereupon apportioned the state and county taxes to be raised, and the portion due on a loan by the state to the defendant, under the name stated, making a total of $2,830.96. Afterwards an application was made, and commissioners were duly appointed, under the statute, to adjust the relative valuations so made by the board, and it was determined by the commissioners that such valuations should be so changed that the total tax to be charged against the defendant was increased to $3,246.95. The county clerk refused to deliver any statement of the taxes so certified to the clerk of de-

fendant, but attempted to deliver the same to the clerk of the plaintiff, and the result was that the defendant paid no portion of said tax for the year 1896. The plaintiff disregarded the certification made to it, on the ground that the amount thereof, except $300 school tax, should have been collected by the defendant. In October, 1897, the county board adopted a resolution charging back $2,946.95 of said tax to the plaintiff, with the penalty prescribed by sec. 1163. At the annual meeting of the board, in November of that year, the usual apportionment of taxes was made, but, instead of charging the defendant with its arrearage as stated, the same was charged with the penalty to plaintiff, amounting in all to $3,683.69, and certified to the town clerk. He thereupon carried the amount into the tax roll, and it was collected by the town treasurer, and paid over to the county. A claim for this amount was made against the defendant by the town, but was wholly disallowed and repudiated. This action is to collect said amount, with interest and costs. The defendant demurred on the ground that the complaint did not state facts sufficient to constitute a cause of action. The trial court held that it did, and it is that question we are to determine upon the defendant's appeal.

Whatever may be the moral aspect of the case we have no concern therewith. It must be determined upon cold and unsympathetic principles of law. A moral obligation will not, of itself, create a legal obligation in an action at law. There must be some legal duty underlying the moral burden to warrant the intervention of the courts. So far as we are able to ascertain, there is no reason stated in the complaint why the county clerk failed or refused to make the proper certification of taxes to the village clerk in 1896. It was certainly his duty to do so under the law, and his attempt to certify the same to the town was a void act, for which the defendant is not responsible. The defendant was a going corporation, acting under the forms of law,

and as such liable for its just share of the burden of taxation. No reason is given, nor can one be imagined, which will legally justify the failure of the county clerk to do his duty, or his unauthorized attempt to charge the town with the obligation belonging to the village. He was therefore clearly in default in the discharge of a duty imposed by law. The village was guilty of no miscarriage, because it had no basis upon which its officers could compute or collect its share of the tax for that year. It collected its taxes independently of the town, and had done so for some years prior thereto, and this fact must certainly have been known to the county officers. While it is not distinctly alleged that the village was acting independently of the town, that fact is a necessary inference from the allegation that it levied and collected its taxes as an independent organization. If this is so, then it would follow that the village would be directly responsible to the county for its delinquency, and not to the town. If such is the case, then, if losses are sustained by the county by the default of any county officer in the discharge of the duties imposed by law in the collection of taxes, under sec. 1157, Stats. 1898, such losses were chargeable to the county. If the village was not an independent organization for taxing purposes, then, when it was discovered that a portion of the territory of the town had been omitted from the roll, it might have been included therein the next year, under sec. 1059. Under any aspect of the case, we cannot discover any legal authority for the action of the county board in charging the arrearage back to the town. If there is any such authority, it has not been produced, and so far our researches have been unable to bring it to light. If there is no authority for such action, then there was no legal duty on the part of the town to pay the county this illegal item.

In the brief of the counsel for plaintiff we find this statement: " The action is not predicated upon any such wrong-

ful act or omission of the defendant. It goes merely upon the proposition that the plaintiff paid, under color of legal proceedings, money to the use of the defendant, which the latter, in equity and good conscience, should repay." This "color of legal proceedings" is said to consist in the resolution of the county board charging this delinquent tax to plaintiff. Without some legal foundation to sustain it, that resolution was as impotent as if the board had voted to charge the tax up to counsel in the case. There being neither semblance of right on the one hand, nor duty on the other, the whole proceeding is as purely voluntary as can be imagined. There is nothing in the complaint showing that defendant has done any act or made any request that the plaintiff should pay this money, and no circumstance is alleged, beyond the moral obligation of defendant to pay, from which any legal obligation can be inferred. No one can make another his debtor against his will, and a voluntary payment of the debt of another, without his knowledge or consent, the party being under no legal obligation to pay, will ordinarily be regarded a gratuity, and the money cannot be recovered back. *Beard v. Horton,* 86 Ala. 202. In order to enable one who paid money to the use of another to maintain an action for money paid, two things are essential: a legal liability on the part of defendant to pay the original demand, and his antecedent request or subsequent promise to pay. The request or promise need not necessarily have been express, and such request or promise, sufficient to uphold an action, will, in some cases, be implied when defendant's duty to pay is absolute. But when, as in this case, the facts alleged show that no such request or promise can possibly be inferred, the action to recover must fail. There are cases where money has been compelled to be paid by operation of law, as in *Ticonic Bank v. Smiley,* 27 Me. 225, or where the party has been compelled to pay another's debt in order to preserve his own property or

rights, as in *Nichols v. Bucknam*, 117 Mass. 488, and a recovery against the original debtor has been permitted. But such is not this case. The situation lacks the essential element of a showing of any facts or circumstances from which a request to pay or promise to refund can be inferred. The demurrer should therefore have been sustained.

*By the Court.*— The order of the superior court of Milwaukee county is reversed, and the cause is remanded with directions to enter an order sustaining the demurrer, and for further proceedings according to law.