HAX & BROTHER, Respondent, v. LOUIS HAX, Appellant.

**Kansas City Court of Appeals, April 30, 1900.**

1. **Covenants: INDEMNITY: DAMAGES: RECOVERY.** Where a covenant is simply to indemnify, damages must be shown to warrant a recovery. Where a covenant is to do a certain act or pay a certain sum it is no defense that the plaintiff has not been damaged and the measure of damages is the agreed amount.

2. ———: **SPECIFIC ACT: EXPENSES IN HANDLING COLLATERALS: ACTION.** A covenant provided that if plaintiff had not been allowed credit for handling collaterals defendant agrees to make it good. Held: This was a covenant to do a specified act and plaintiff was entitled to recover when it appeared he had not been allowed for handling collaterals.

3. ———: **PLEADING: CONSTRUCTION.** A petition pleaded a covenant *in haec verba* and that it was entered into to protect plaintiff on account of handling certain collaterals, and applied it to the claim in suit. The answer admitted the covenant and did not seek to take the claim out of its application. Held: An admission of the petition's application of the covenant; and in the construction of a contract consideration should be given to what was in the minds of the contracting parties.

4. ———: **EVIDENCE: JUDGMENT: TRUSTEE.** In an action on a covenant to recover unallowed credits for handling collaterals, a judgment obtained by plaintiff's agent against plaintiff's trustee for services in handling such collaterals is admissible in evidence.

Appeal from the Buchanan Circuit Court.—*Hon. R. E. Culver*, Judge.

AFFIRMED.

*H. K. White* for appellant.

(1)   The contract sued upon was only a contract of indemnity against damages, and no right of action had accrued

therein at the time of institution of this suit. 2 Sedgwick on Damages [8 Ed.], secs, 791, 792, 793; 2 Sutherland on Damages [Ed. 1884], p. 602; Borum v. Reed, 73 Mo. 461; Wicker v. Hoppock, 73 U. S. 99; Gennings v. Norton, 35 Me. 308; Hussey v. Collins, 30 Me. 190; Weller v. Eames, 15 Minn. [1 Ed.], p. 461 (p. 376 reprint); Jeffer v. Johnson, 21 W. J. Law, 73. (2) The loss sustained by the Modern Loan and Investment Company, by the successful assertion of the offset claimed by Louis W. Hax, can not be made the basis of an action by plaintiffs. 2 Cook on Corporations [3 Ed.], sec. 709; Humphreys v. McKissock, 140 U. S. 304, loc. cit. 312; Smith v. Hurd, 12 Metc., 371 loc. cit. 385; Fitzgerald v. Railroad, 45 Fed. Rep. 812; England v. Dearborn, 141 Mass. 590; Russell v. McLellan, 14 Pick. 63; Isham v. Iron Co., 19 Vt. 230; Wheelock v. Moulton, 15 Vt. 519. (3) The court erred in refusing the first instruction asked by defendant because the jury should have been told that the judgment obtained by young Hax was not binding on his father, the appellant. McDermott v. Railroad, 87 Mo. 285, loc cit. 299; Garesche v. St. Vincent's Coll., 76 Mo. 332; Woods v. Railway, 51 Mo. App. 500; Rall Bros. v. McCrary, 45 Mo. App. 365, loc. cit. 372; Hahn v. Colton, 136 Nev. 216, loc. cit. 224. (4) The judgment obtained by young Hax was not binding upon the appellant. Cravens v. Jameson, 59 Mo. 68, loc. cit. 74; Thrasher v. Greene Co., 105 Mo. 244; McKinney v. Guhman, 38 Mo. App. 344, loc. cit. 349.

*Vinton Pike* for respondents.

(1) The covenant sued on is an affirmative one to do a certain thing and an action lies as soon as liability is fixed. Hicks v. Hoos, 44 Mo. App. 571, 579; Ham v. Hill, 29 Mo. 275; Carmen v. Noble, 9 Pa. St. 366-371; Jones v. Childs, 8 Nev. 125; Stroh v. Kimmel, 8 Watts, 155; Bank v. Douglas, 4 Watts, 95; Fisk v. Dana, 10 Mass. 46; Webb v. Pond,

19 Wend. 242; Chase v. Hinman, 8 Wend. 457; In re Negus, 7 Wend. 504; Conkey v. Hopkins, 17 Johns. 111; Bansimer v. Fell, 19 S. E. Rep. 547; Bank v. Leyser, 116 Mo. 74. (2) Defendant's attempt to construe the covenant as a promise to make good unreported collections of young Hax, the custodian, can not succeed. There is no controversy in the pleadings as to the legal effect of the contract. We plead the covenant in the words of the contract and that it was made to protect plaintiffs against this claim. The answer admits the execution of the contract, and that Louis W. was custodian of the collaterals mentioned in the contract. (3) The judgment in Sigel v. Hax was admissible to prove the fact and amount of the omitted credit. Carmen v. Noble, 9 Pa. St. 366 loc cit. 371; Stroh v. Kimmel, 8 Watts, 157. (4) On the theory defendant contends for, actual damage was shown. 2 Rand. Com. Pap., 720; Bank v. Smiley, 27 Me. 225.

SMITH, P. J.—The salient facts of this case, as disclosed by the evidence on the record before us, may be briefly stated in this wise: The St. Joseph Loan & Trust Company—which we shall hereafter for brevity designate the trust company—was indebted to the plaintiffs (partners under the name of Hax & Bro.) in a large amount of money, insufficiently secured by a great number of collateral evidences of indebtedness which had been transferred to plaintiffs; while the plaintiffs and the trust company were so related the plaintiffs agreed with the defendant to take $26,260 for the said indebtedness owing to them by the trust company, and to turn over to the defendant the collaterals already referred to; and thereupon a written contract was entered into to the effect, that in consideration of the payment by said defendant to said plaintiffs of the sum of $26,200, plaintiffs agree to turn legally over all of the collateral security given by the trust company as collateral

to said indebtedness that may be at this time in their possession, and such collateral security not now in their possession, but in the hands of bankers or attorneys for collection. Herewith attached is an itemized statement of said settlement. All items treated in this statement are accepted as final. Should it appear in the future that said plaintiffs have collected on any collateral, and not treated in accompanying statement, they agree to make it good; and should it appear that said plaintiffs have not been allowed any credits on account of handling said collaterals the said defendant agrees to make it good.

The said collaterals had been placed in the possession of defendant's son, who handled the same for eighteen months without any understanding as to whether or not he should be paid any compensation for his services so rendered. It further appears that the defendant's son was indebted to plaintiffs by note in the sum of $3,057.14, which was indorsed by plaintiffs to the Modern Loan and Investment Company, which we shall hereafter refer to as the investment company, and by that company indorsed in blank. One Sigel, claiming title to the note under the blank indorsement, brought suit thereon against defendant's son, who, by his answer pleaded a counterclaim for his services in handling the said collaterals for plaintiffs, and that said indorsements were pretendedly made to prevent him from recovering on his counterclaim against plaintiffs. The defendant's son in that suit recovered judgment for $900. The stock in the investment company was owned by plaintiffs and the note on which the suit of Sigel against defendant's son was based, had been transferred to that company by them merely for convenience.

The covenant in said contract, that, should it appear in the future that plaintiffs have not been allowed any credits on account of handling said collaterals the defendant agreed to make it good, was made the foundation of the plaintiff's

suit.  The breach alleged in the petition was that the defendant had failed to make good to plaintiffs the said sum of nine hundred dollars paid his son for handling said collaterals.  There was a trial and judgment for plaintiffs, and to reverse which the defendant has brought the cause here by appeal.

Whether or not the covenant sued on shall be deemed to be a contract of indemnity merely, or, an agreement requiring some positive act of performance, is the first question which we are required to decide.  It may as well be stated at the outset that the authorities. are by no means uniform in the construction of agreements of similar nature and words.  Ham v. Hill, 29 Mo. 275, was an action on a bond that recited that Hill had purchased the interest of Ham in the firm of Ham & Hill, and had bound himself to assume all the liabilities incurred by said firm between certain dates, and to pay the same whenever legally demanded by the creditors.  The firm's creditors referred to in the bond legally demanded of Hill the payment of their debts, which was refused.  In the course of the opinion in the case it was said:

"The question for consideration is whether a right of action accrued on the bond upon the failure of the defendant to pay the debts it provides for, according to its stipulation; or, is it a bond of indemnity merely?  *  *  *  It is a bond with an affirmative covenant to do a certain thing; the defendant thereby bound himself to take the place individually of the firm and discharge the debts for which it was liable and which, as it respects the parties themselves, became by the bond the individual debts of the defendant.  Although the legal liability of the firm to its creditors is not changed by the instrument, yet, as to these firm debts, it creates the relation of creditor and debtor between the plaintiff and defendant, and the assumpsit by the defendant is equivalent to a direct promise to pay the money to the plain-

tiff. In promising to pay the debts for which as a firm they were liable the defendant thereby incurred an obligation which was violated, and for which a right of action accrued to plaintiff when he (defendant) failed to pay them on demand of the creditors."

Hicks v. Hoos, 44 Mo. App. 571, was an action on a bond for $5,000. In a condition thereof it was recited that Hicks had loaned Hoos $6,000, evidenced by certain promissory notes secured by deed of trust, etc. It also contained an agreement to the effect that said $6,000 should be used in the erection of four dwelling houses on certain lots, so that the actual cost of the construction of said houses should be that amount. The petition alleged a breach of this agreement. In the opinion in the case, delivered by Judge Ellison, it is said:

"The testimony discloses that the full amount borrowed was not put into said houses as provided in the bond. But there is no testimony going to show any damage to plaintiff from the breach of the bond, and the trial court refused to hear any testimony to show that no damage would result. We will sustain the court's ruling in this respect. The bond is not one of indemnity against what damage may result to plaintiff by reason of a failure to expend borrowed money in building the houses; but an affirmative covenant to do a specific thing." On the motion for a rehearing in the same case it was said: "It may be conceded that it is well established by a current of decisions that if there be a covenant to indemnify simply and no more, then the damage must be shown before the party indemnified is entitled to recover; but if there be an affirmative covenant to do a certain act, or to pay a certain sum or sums of money, then it is no defense to say the plaintiff has not been damnified, and the measure of damages in such case is the amount agreed to be paid or the proper expense of doing the act agreed to be done."

The clause of the contract in question, it seems to us, is an affirmative covenant to do a certain thing. It is disclosed by the terms of the contract that the plaintiffs were to receive $26,200 for the collaterals in the condition which the itemized statement, referred to in the contract, showed them to be, and that this sum and condition was to be maintained. And to accomplish this, it was further stipulated in the contract that if it should appear in the future that the plaintiffs had collected on any of said collaterals and not treated in the accompanying statement they would make it good—or, in other words, if the plaintiffs had made any collections on said collaterals with which they were not charged in the statement, that the plaintiffs would account to the defendant therefor. And, on the other hand, if it should turn out that there should be any claim made for handling said collaterals, while the title thereto was in the plaintiffs, which did not appear as a credit in said statement, or, which would have the effect to diminish the aggregate amount which the said statement showed the plaintiffs had received, or, which would reduce the amount they were to receive under the contract for such collaterals, the defendant, in that event, would protect the plaintiffs by discharging the claim so appearing. Although the legal liability of the plaintiffs to the person having said claim for his service in handling the collateral was not changed by the contract between plaintiffs and defendant, yet, as to this claim, it created the relation of debtor and creditor between plaintiffs and defendant, and the undertaking by the defendant was equivalent to a direct promise to pay the amount of said claim to plaintiffs. In promising to pay this claim the defendant incurred an obligation which was violated, and for which a right of action accrued to plaintiffs the moment the claim of the defendant's son was made to appear.

The cases from which we have quoted, with many

others cited in the briefs of counsel and in the notes to section 761, of Southerland on Damages, well illustrate the distinction between bonds of indemnity and covenants to perform a particular act. This case, we think, is of the latter class. We are unable to uphold the defendant's contention that the covenant was no more than a promise to make good the unreported collections of his son, who, it is admitted by the pleadings, was the custodian of the collaterals. If it was the intention to protect the plaintiffs against such a default of the defendant's son, certainly the words employed in the covenant are inapt to express that intention.

The plaintiffs pleaded the covenant in *haec verba* and that it was entered into to protect plaintiffs against any claim arising "on account of handling the collaterals." The answer admitted the contract and that defendant's son was custodian of the collaterals mentioned in the contract. The contract did not recite that defendant's son was the custodian of the collaterals, but this fact was alleged in that part of the petition which specifies the subject-matter to which the covenant was applicable. Therefore, it seems that the answer may be construed to be an admission of the covenant and its application to the subject-matter as alleged. The petition applies the covenant to this claim and the answer does not seek to take its words out of the application made by the petition by pleading any state of facts which call for a construction differing from that placed upon them by plaintiff's pleading. In construing the contract, we have a right to take into consideration what may be reasonably presumed to have been in the minds of the contracting parties. The defendant's son acted as his agent in making the contract, and we can not think the latter intended to bind his father on a covenant to protect the plaintiffs against his own default. It seems that such expenses were entered on the statement as credits, and in view of the fact that the plaintiffs knew that the defendant's son had handled the collat-

erals, and consequently might make a claim for his services in doing so, they chose for their own protection to exact of defendant a covenant that he would take care of that claim if made.

The defendant imputes further error to the trial court in permitting plaintiffs to introduce in evidence the judgment in the Sigel case, already referred to, for the purpose of establishing the amount of the claim of defendant's son—the omitted credit. This judgment was properly admitted. Carmen v. Noble, 9 Pa. St. 366; Stroh v. Kimmel, 8 Watts, 155.

But the court did not go quite to that extent, for it appears from an instruction given on its own motion that it thereby told the jury that the plaintiffs were not entitled to recover the amount of the judgment just referred to, unless it found from the evidence that that amount was a reasonable compensation for the services of defendant's son—the plaintiff therein—in handling the collaterals as charged in his set-off, and if they found a less sum was reasonable the verdict should be for such sum as it found from the evidence was reasonable, and provided they found under all the circumstances that the exercise of ordinary prudence made such employment reasonable. Even if this instruction and the evidence upon which it was based were improper, still, they were more beneficial than harmful to the defendant. It would, therefore, seem that on the theory defendant contends for, actual damage was shown. The verdict in Sigel v. Hax, established that as between Sigel, the investment company and plaintiffs, the latter were the owners of the note sued on in that case. The investment company was the same as plaintiffs. It could not sue on this contract without an assignment from plaintiffs. When the set-off was recovered it was recovered against plaintiffs, Sigel being merely their trustee. When the note was transferred to the investment company plaintiffs must have been

credited with it. No matter what the form may have been, that was the subject of the transaction. When the set-off was recovered they became chargeable with it. The law charged them with it and the record of it became a mere matter of bookkeeping. Plaintiffs, as a corporation, suf-fered the loss. The plaintiffs were not required to sue themselves in the name of their corporation and recover the amount. They owned and controlled the corporation and for the purposes of this case were the same as the corporation. The limited indorsement of the note cuts no figure here. The indorsement warranted the note free of set-off. 2 Rand. Com. Pap., 720; Bank v. Smiley, 27 Mo. 225.

Plaintiffs could treat their loss as they pleased. They could have had the corporation charge plaintiffs with it, who would thereby lose it in form, or they could as among them-selves have called it a loss, to the extent of the claim, on the value of their stock. It is not for defendant to prescribe the form in which they shall state or estimate their loss. It is enough for him that they have substantially suffered it.

No error is perceived in the action of the court in the giving or refusing instructions that was prejudicial to the defendant on the merits. The case has been well and ably presented by counsel for the defendant both in his brief and argument, but these have not convinced us that the judgment is for the wrong party. It must, therefore, be affirmed. *Ellison, J.*, concurs; *Gill, J.*, not sitting.