179 So. 245

**WILKES v. STACY WILLIAMS CO., Inc.**

**6 Div. 147.**

Supreme Court of Alabama.

Feb. 17, 1938.

Taylor & Higgins, of Birmingham, for appellant.

Beddow, Ray & Jones, of Birmingham, for appellee.

FOSTER, Justice.

This is an action at law for the recovery of damages for the breach of a contract of employment as a sales broker between plaintiff and the Stacy Williams Company, a partnership composed of Stacy Williams and Claude Bennett, and for services rendered and accepted under the contract after defendant undertook to terminate it. It was dated January 1, 1929, and was to continue for ten years thereafter. The defendant is "The Stacy Williams Company, Inc.," a corporation.

The corporation was formed on the 1st day of July, 1929, with a capital stock of $10,000, divided into 100 shares, with Stacy Williams owning 49 shares; his wife, B. L. Williams, 1 share; Claude Bennett 49 shares, and his wife 1 share. All of it was paid by transferring to the corporation all the personal property of the partnership, used in its business. The above-named parties constituted all the officers and directors of the corporation. The business was continued in every respect as it had been before. But it was done as a corporation, though by the same name. Its letters and stationery were in the corporate capacity, and checks given to plaintiff the same way in payment of his services. He continued to perform the service as before, treating with the same parties for defendant, though they were using the corporate name.

That status continued until December 20, 1932, when a letter was sent to plaintiff by registered mail, signed by Stacy Williams, Claude Bennett, the Stacy Williams Company, Inc., by Stacy Williams, president. It referred to the contract above mentioned, and declared it canceled as of December 20, 1932, because he had been devoting a part of his time to other business. It was shown on the trial that the other business was a side line of coffee, to which we will refer later.

Plaintiff continued to perform his services for several months, and for sales made after December 20th defendant has not paid him. His compensation was on a commission basis.

The defense, which seems to have been controlling, inducing the affirmative charge for defendant, was the statute of frauds, in that the contract was not to be performed within a year after the corporation took over the business, and the corporation did not contract in writing as required by section 8034(1), Code.

The principle on which the trial court apparently acted, as urged here, is "that a corporation is a distinct entity, to be considered separate and apart from the individuals who compose it, and is not to be affected by the personal rights and obligations' and transactions of its stockholders, and this whether said rights accrued or obligations were incurred before or subsequent to incorporation." Moore & Handley Hardware Co. v. Towers Hardware Co., 87 Ala. 206, 210, 6 So. 41, 43, 13 Am.St.Rep. 23; Navco Hardwood Co. v. Bass, 214 Ala. 553, 108 So. 452, 453; 4 Thompson on Corporations, 3d Ed., § 2430 (2345); 15 A.L.R. 1126.

In the Moore & Handley Case, supra, the corporation did not take over all the assets of the partnership, but left with it all notes and accounts and real estate, more than sufficient to pay its debts and liabilities. The court also observed that: "It is not shown that this is a mere 'paper corporation' to cover a joint venture in which the corporators are partners in intention, and have resorted to this form for the purpose of evading and avoiding obligations which they had taken upon themselves as individuals, or for the purpose of evading the promise relied on here. If these things had appeared in the case we should not hesitate to hold the corporation answerable for the individual obligation. But in the absence of fraud

'no authorities have gone the length of holding that any contract made with individuals exclusively upon individual credit will become the contract of any future corporation that may form for the more convenient management and use of the benefits of it.' Little Rock & Ft. S. R. Co. Cases, supra [Perry v. Little Rock & Ft. S. R. Co., 44 Ark. 383]."

Here the corporation apparently took over all assets and treated the contract in question as its own, and lived by it for several years. There is no question but that it was a ratification or adoption of the contract as its own to the extent that it could do so within the statute of frauds, Code 1923 § 8034. 13 Corpus Juris 241, 242, and 243, note 50; Wiggins Ferry Co. v. Ohio, etc., R. Co., 142 U.S. 396, 12 S.Ct. 188, 35 L.Ed. 1055; 14 Corpus Juris 259, 260, 261, 262, 263.

Ordinarily the purchase by a corporation of the assets of a partnership is not the equivalent of such a writing as may be required by the statute of frauds, except that feature of it which relates to the assumption of the debt of another. Fletcher, Cyc. on Corporations, § 4016; 4 Thompson on Corporations, 3d Ed., § 2439; 27 Corpus Juris 317, § 403, 298, § 377.

In this instance there must be more than a ratification or adoption as an implication of fact. But there must be such a writing as the statute requires, or a contract implied by law. An obligation implied in fact is within the statute, but one implied or created by law is not. 27 Corpus Juris 317, 318.

A contract created by law is one which is imposed without regard to the assent of the parties to be bound, on the ground that it is dictated by reason and justice. It rests solely on a legal fiction. 13 Corpus Juris 244.

When the law declares that a constructive contract exists growing out of the existence of a certain state of facts, the statute of frauds cannot operate to prevent the principle from taking effect. It is consistent with that theory that the courts have held that certain facts raise a legal or constructive contract by a corporation which is merely a continuation of a prior partnership business, except in form, to discharge all the debts and obligations of the partnership. When so created, the statute of frauds does not affect it. It is thus expressed in Andres v. Morgan, 62 Ohio St. 236, 56 N.E. 875, 877, 78 Am.St.Rep. 712, quoted in notes to 8 Fletcher, Cyc. of Corporation Law, p. 408:

"There was in fact no purchase in this case. It, as shown, was simply a change from doing business in one capacity to that of another,—the same persons changed from partners to corporators; and this distinction reconciles many cases on the subject that might otherwise seem in conflict. Where there is a purchase in fact by a new company from an old one, there is, as before observed, no liability of the new for the debts of the old company, unless assumed as a part of the consideration. But where a mere transformation is had,—parties remaining the same,—and the property is transferred by the members of the old company transferring their interest in it for an equal interest in it as property of the new, the transaction does not constitute a sale by the one and a purchase by the other. It is simply a change in the manner and form of carrying on the same business by the same persons; and, brushing aside the fiction of a legal entity, it is seen that no real change has taken place, and that, in looking to the new formation for payment, the creditor looks to the same persons, possessed of the same property and rights, he contracted with in the first instance; and to construe the transaction, as to creditors, as a purchase, tends to operate a fraud on their rights. Every purchase implies two distinct persons,—a buyer and seller. It is a moral impossibility for one person to buy of or sell to himself. Modern decisions, as observed by Mr. Taylor (Priv.Corp., § 51), are tending to a disregard of the mental conception that a corporation is an entity separate from its corporators, as in many instances it is simply a stumbling-block in the way of doing justice between real persons."

There is a distinct line of cases on that subject as shown in Fletcher on Corporations, supra, and 4 Thompson on Corporations, § 2431, citing Austin v. Tecumseh National Bank, 49 Neb. 412, 68 N.W. 628, 630, 35 L.R.A. 444, 59 Am.St.Rep. 543, from which we quote the following: "Cases where, as in Reed Bros. Co. v. First Nat. Bank, 46 Neb. 168, 64 N.W. 701 [supra], the circumstances attending the creation of the new corporation, and its succession to the business, franchise, and property of the old, are such as to raise the presumption or warrant the finding that it is a mere continuation of the former,—that it is, in short, the same corporate body

under a different name. And the facts upon which such finding or presumption depends will not be presumed, but should affirmatively appear from the pleadings and proofs."

There is no doubt but that this principle is as well settled as the general rule cited in the Moore & Handley Case, supra, and annotations in 15 A.L.R. 1126.

The contract itself contemplated that the business of the partnership would be swept into a corporation as manifested by the following extract taken from it: "Should The Stacy Williams Company be incorporated or should the present owners of the said The Stacy Williams Company, or either of them, sell all or any part of their interest in the said The Stacy Williams Company to any person, firm or corporation, this contract shall be binding upon such corporation and/or such person, firm or corporation, and any such person, firm or corporation shall be substituted for the parties of the first part and all of the terms and conditions of this contract shall be binding upon the parties so substituted in lieu of the parties of the first part, and the parties of the first part named herein, to-wit, Stacy Williams and Claude Bennett, shall be relieved of any further liability hereunder." •

This was done a few months afterwards. The wives of the partners put in no money, as the record shows that the stock was issued for the assets of the partnership. They have but a nominal interest, evidently to furnish the requisite number of incorporators.

■ When a business thus becomes merged into a corporation, it resembles the merger of two corporations authorized by statute. The fact of such merger raises a contract created or construed by the law to carry out the obligations and contracts of those merging. There is in no proper sense an ordinary sale by the one to the other, whereby the obligations of the latter are dependent upon its contract, in the absence of fraud, and such contract is affected by the statute of frauds.

In this case, defendant offered no evidence, and, at the conclusion of plaintiff's evidence, both parties asked for the affirmative charge.

In some jurisdictions a request by both parties for a directed verdict is equivalent to a joint request for a finding of fact by the court, and such finding must stand if the record discloses substantial evidence to support it, and is a waiver of a verdict by the jury. Williams v. Vreeland, 250 U.S. 295, 39 S.Ct. 438, 63 L.Ed. 989, 3 A.L.R. 1038; 18 Alabama Digest, Trial, 694, § 177. See Nashville C. & St. L. Ry. v. Cody, 137 Ala. 597, 34 So. 1003.

■ But this rule is disputed in many jurisdictions, though it is supported by a majority of the states. 64 Corpus Juris 434 et seq., § 428; 18 A.L.R. 1433; 69 A.L.R. 634; 108 A.L.R. 1315; 26 R.C.L. 1080. And, where it exists, it seems to apply only where a request is made for a directed verdict. Such a request is essentially different from a request with hypothesis based upon a belief of the evidence by the jury. Reed v. Ridout's Ambulance, 212 Ala. 428 (8 and 9), 102 So. 906; Louisville & Nashville R. Co. v. Jenkins, 196 Ala. 136, 72 So. 68.

■ Appellant insists that under section 6149, Code, the judgment should be reversed and a judgment here rendered. But that section only authorizes this court to render such judgment as that court should have rendered. There was no mutual request for a directed verdict. Even if we should hold that such a request withdraws the case from the jury, we should not hold that there was a withdrawal from the jury by reason of a mutual request based upon a belief by the jury of the evidence. Unless the case was withdrawn from the jury expressly or impliedly, the trial court could not render a judgment without a verdict, and so this court cannot do so, under section 6149, Code. See, also, sections 9498 and 9502, Code.

But we think it was error to give an affirmative instruction to the jury to find for defendant on the contention that the statute of frauds is controlling. But, in the absence of other defense, it might have been given for the plaintiff.

The letter discharging plaintiff assigns as a reason that plaintiff has not devoted his time and energies to defendant's business, as required by the contract, but is partly engaged in other business. The evidence shows that plaintiff sold coffee for some other concern in connection with his work for defendant. He claims that in doing so it was not competitive with that of selling syrup for defendant, and did not prevent him from giving his time and energy to defendant's business, as he had agreed in the contract, and in no manner injured defendant's business. The

contract provides that he shall "devote his time and energies to the business of the party of the first part."

There was no evidence except that given on behalf of plaintiff. Its tendency was such that the jury could find that the activity of plaintiff in selling coffee was not competitive with any business of defendant; that there was no conflict in interest; that it did not injure such business of defendant, nor prevent him from giving the time and attention due the business of defendant. When so, the affirmative charge was not due defendant on that contention. Perfection Mattress & Spring Co. v. Dupree, 216 Ala. 303, 113 So. 74.

Any controversy as to the amount of damages shown does not justify an affirmative charge for defendant generally, disregarding the right to nominal damages. By that observation, we do not mean to intimate any opinion in respect to the amount of a recovery which may be assessed. The rules in respect to damages are discussed in the Dupree Case, supra.

For giving the affirmative charge for defendant, the judgment is reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.