Mary G. ROEBLING, Appellant,

v.

Robert B. ANDERSON, Secretary of the
Treasury, Appellee.

No. 13878.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 20, 1958.

Decided May 15, 1958.

Mr. John K. Pickens, Washington, D. C., with whom Messrs. M. Joseph Stoutenburgh and Jerry N. Griffin, Washington, D. C., were on the brief, for appellant.

Mr. H. Clay Espey, Washington, D. C., for appellee.

Before PRETTYMAN, BAZELON and FAHY, Circuit Judges.

FAHY, Circuit Judge.

The case is complicated in its details but in essence consists of the claim of Mary G. Roebling, plaintiff, to an accounting and possible recovery from the Reconstruction Finance Corporation,[1] based on contract, of sums retained or realized by it from collateral in excess of the amounts of loans it had made to the Trenton Trust Company of Trenton, New Jersey. Mary G. Roebling is the widow of Siegfried Roebling, who was a director of the Trust Company. For purposes of simplicity, since there is no issue as to the succession, we shall refer ordinarily to plaintiff and the interest of her deceased husband as Roebling.

Roebling sued in the District Court on the bases of (1) an express contract, (2) an implied agreement, and (3) a quasi-contract or unjust enrichment. The case was heard by the court without a jury. At the conclusion of Roebling's case the court granted RFC's motion to dismiss, giving as ground therefor that Roebling had failed to prove the express contract relied upon, and, further, that if such contract had been made it was too vague and indefinite to be enforced.

[1]. Robert B. Anderson, Secretary of the Treasury, was substituted for the RFC, as the functions of the latter were transferred to the Secretary pursuant to §§ 2(d), (e), and 3 of Reorganization Plan No. 1 of 1957, 22 Fed.Reg. 4633.

■ On her appeal from the ensuing judgment dismissing her complaint upon the merits, Roebling presents five points, two of which can be disposed of rather quickly. It is said that formal findings of fact and conclusions of law as required by Rules 52(a) and 41(b) of the Fed. Rules Civ.Proc. 28 U.S.C.A., were not made. In view of our disposition of the case this omission can be supplied on the remand. It is also contended that the trial court erred in refusing to admit certain testimony of prior dealings between Roebling and the Board of Directors of RFC. We think this was a matter within the sound discretion of the trial court, which was not abused. But we leave the subject open for reconsideration by the trial court in the light of developments on the remand.

The three other questions presented by Roebling are: (1) there was a definite, legal, enforceable agreement; (2) if not, it was nevertheless error for the court to fail to rule upon the counts for breach of an implied-in-fact contract and quasi-contract;[2] and (3) error occurred in denial of Roebling's motion for production of additional documents under Rule 34, Fed.Rules Civ.Proc.

Since we think the last point is well taken, as to be more fully explained, we do not definitively rule on the other two. For if additional documents are produced the factual problem as to a contract, express or implied or quasi, might vary from that now before the courts, even were we of opinion that the present record does not establish a contract of any kind.

We now set forth a somewhat lengthy statement of how the case arose, which seems necessary for disposition of the discovery question.

In 1933 notes totalling $585,000 were given to the Trenton Trust Company by six of its directors, two of whom were Roebling ($200,000 note) and Voorhees ($100,000 note). In return approximately $585,000 of "slow assets" were put in trust by the bank for the benefit of the notemakers. In May 1934 RFC loaned $2,000,000 to the bank through the latter's subsidiary, the Trentrusco Corp. There was pledged with RFC as security 100,000 shares of Trenton Trust Company preferred A stock, par value $6, liquidation value $20, and $500,000 of the $585,000 slow assets which had been put in trust. This latter collateral was released by the trustees with approval of the notemakers. In September 1936 RFC loaned a second $2,000,000 to the bank in the form of a purchase of 100,000 shares of its preferred A stock.

The five directors other than Roebling claimed later that their notes were not primary obligations but for accommodation only. From 1936 to 1940 unsuccessful attempts were made by the bank, by Roebling, and by RFC to induce the five directors to recognize their notes as primary obligations and to put them in bankable condition.

On February 23, 1940, RFC foreclosed the collateral of the first loan and acquired this collateral by bidding it in for the amount of the principal then due on the loan note ($1,808,000).

On March 15, 1940, RFC authorized the offering of shares of preferred A stock to those directors, other than Roebling, who should pay or make bankable their notes. Stock would be given to them in amounts equivalent to the value of their respective notes at the rate of $20 per share. By April 19 director Chamberlain agreed to this. On May 17, 1940, however, RFC revoked this authorization but authorized the release of some 13,583 shares to the four directors other than Roebling and Voorhees provided they made their notes bankable, which, with the exception of Chamberlain, they failed to do.

Roebling alleges that then an oral contract was made between her and RFC in a series of conferences with RFC's repre-

---

2. Roebling appears to list unjust enrichment as a theory of recovery different from quasi-contract. Our understanding is that unjust enrichment is a basis upon which quasi-contract recovery can be obtained. See 1 Williston, Contracts **15** (3d ed. 1957).

sentatives, ending prior to May 20, 1940, for the purpose of encouraging the directors other than Roebling and Voorhees to pay or make bankable their notes. The encouragement was to come through the creation by Roebling of a market for the stock which would be issued to them. By the alleged contract, omitting some details, RFC would release to these directors shares of preferred A stock in amounts equivalent to their respective notes at the rate of $20 per share and would transfer to Roebling "all of such shares, or other assets * * * from time to time as sufficient equity for that purpose accrued in the collateral originally pledged with the defendant [RFC] to secure the $2,000,000 loan of May 23, 1934 * * *" provided that the directors would pay their notes or put them in bankable condition. Roebling would then purchase from the three directors other than Chamberlain, Voorhees, and herself, at $6 per share, the shares of stock released to them by the RFC.

Roebling contends that the details of the contract were evidenced by a letter of May 20, 1940, from Roebling's attorney to the authorized representative of RFC setting forth the attorney's understanding of the agreement. The letter was introduced in evidence.

Voorhees refused to pay or make bankable his note but by June 4, 1940, the others had done so. RFC accordingly delivered to each of them shares of preferred A stock, which Roebling then purchased from them for $6 per share, totalling $67,220. They applied the proceeds on the balances due on their notes. On June 18, 1940, Roebling made the last payment on her note, thus retiring it.

On June 1, 1941, RFC authorized transfer of 1200 shares of preferred A stock to Roebling provided she pay the expenses in connection with the transfer. The actual transfer was made in January or February 1942.

In December 1952 Trenton Trust Company retired the remaining 85,217 shares of preferred A stock used as collateral (100,000 less 14,783 shares given to the five directors, including Roebling) by paying to RFC $20 per share plus accrued dividends. In this manner, with the payments previously made, RFC recovered the amount of its first, 1934, loan. By May 1954 it had recovered the amount of its second, 1936, loan, when Roebling purchased from RFC the last 40,000 shares at $20 per share.

Upon the basis of the matters thus summarized Roebling filed her suit.

Roebling instituted pretrial discovery proceedings under F.R.Civ.P. 34,[3] seeking the right to inspect certain files of RFC related to the loans. The files requested were:

"1. Loan docket file, showing all transactions, collections and disbursements.

"2. Files showing the transactions relating to (a) transfers or other disposition of all shares of Preferred Stock "A" of Trenton Trust Company held by defendant at any time during the period aforesaid [May 23, 1934, to June 29, 1954] and (b) the disposition of the additional collateral securing the first loan (all of which was foreclosed on February 23, 1940 and is itemized as Exhibit A to the Amended Complaint) during the period from February 23, 1940 to June 29, 1954.

"3. Correspondence file.

"4. Legal file.

---

3. F.R.Civ.P. 34:
"Upon motion of any party showing good cause therefor and upon notice to all other parties, and subject to the provisions of Rule 30(b), the court in which an action is pending may (1) order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party,

of any designated documents, papers, books, accounts, letters, photographs. objects, or tangible things, not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 26(b) and which are in his possession, custody, or control * * *."

"5. Loan agreement or agreements.

"6. Minutes of meetings of, and the transcript of all material remarks before, the Board of Directors of the defendant, Reconstruction Finance Corporation, concerning (1) said loans, (2) the authority of Messrs. McGrath, Scott, Boggs, MacArthur and others to act in connection with said loan accounts, (3) the release of shares of said Preferred Stock "A" to plaintiff and other Directors of said Trust Company and (4) the repayment by Reconstruction Finance Corporation of the foreclosure expenses to plaintiff and other said directors of the Trust Company.

"7. Basic memoranda to appropriate division chiefs relating to all matters set forth in 6(1) through 6(4) above and memoranda based on such basic memoranda and prepared for the Board of Directors of the Reconstruction Finance Corporation by the examining and legal divisions of that Corporation or members of the staffs thereof.

"8. Records relating to the duties, responsibilities and authority of all officers and employees of the Reconstruction Finance Corporation charged with the responsibility for the Trenton Trust Company and/or the Trentrusco Corporation loan account or accounts, including all records relating to the duties, responsibilities, and authority of Messrs. McGrath, Boggs, Ralston, Scott and MacArthur in connection therewith."

The District Court ordered RFC to file a list of those documents which were

"pertinent to the Trenton Trust Company and/or the Trentrusco Corporation loan account or accounts with the Defendant, from the period from May 23, 1934 to June 29, 1954, *and to the alleged contract of May 20, 1940* upon which Plaintiff relies in her action and which are relevant to the issues in this case." [Emphasis added.]

RFC duly filed a list, to which Roebling objected on the ground that it only partially complied with the order of the court, specifically that the documents RFC listed were concerned only with the express-contract issue and left out documents concerning the contract-implied-in-fact and quasi-contract issues. RFC replied that the latter "necessarily are dependent upon the alleged express contract." The court overruled Roebling's objections.

The court did not state its reasons for this ruling, but it appears that RFC was required to produce only documents related to the express-contract theory of recovery. In our view such a limitation was not warranted. Though appellate courts will generally not interfere with a trial court's disposition of matters of discovery, they will do so when the ruling is "improvident and affect[s] the substantial rights of the parties." Carter v. Baltimore & O. R., 80 U.S.App.D.C. 257, 259, 152 F.2d 129, 131.

There is a difference between an express contract and one implied in fact.

"Contracts are express when their terms are stated by the parties and are often said to be implied when their terms are not so stated. The distinction is not based on legal effect but on the way in which mutual assent is manifested. * * * [Contracts implied in fact are] obligations arising from mutual agreement and intent to promise but where the agreement and promise have not been expressed in words.[4] "

There is also a difference between express contracts and quasi-contracts, for in the latter mutual assent is not needed. As Williston states, quasi-contracts are imposed by law on the defendant irrespective of, and sometimes in violation of, his intention.[5]

---

4. 1 Willston, Contracts 8–11 (3d ed. 1957).

5. Id. at 10.

■ RFC argues, however, that the motion to produce was defective in that the documents desired were inadequately designated and Roebling had asked for permission to make an unrestricted search of RFC's files. Assuming arguendo that such a request could not be granted, see Mercantile Metal & Ore Corp. v. American Gen. Supply Corp., D.C.S.D.N.Y., 12 F.R.D. 345; Frank v. Tinicum Metal Co., D.C.E.D.Pa., 11 F.R. D. 83; Kenealy v. Texas Co., D.C.S.D.N. Y., 29 F.Supp. 502, the better rule does not require that each specific paper be designated, though there appear to be decisions to the contrary.[6] The requirements of Rule 34 were satisfied in this case [7] by a designation of documents by categories so long as the categories themselves were set forth with reasonable particularity,[8] which we think was done.[9]

■ RFC also contends that good cause has not been shown as required by Rule 34. In Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, the Court laid down some general guides on this aspect of the problem:

"[T]he deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." [10]

What constitutes good cause takes into account considerations of practical convenience. Barron & Holtzoff state that "the court should be satisfied that the production of the requested document is necessary to enable a party to prepare his case or that it will facilitate proof or aid in the progress of the trial."[11] Moore summarizes it as follows:

"[T]here should be a showing that the documents sought to be inspected will in some way aid the moving party in the preparation of his case; that the documents are relevant to

---

6. See Martin-Parry Corp. v. C. A. Bader Co., D.C.D.Conn., 16 F.R.D. 465; Lundberg v. Welles, D.C.S.D.N.Y., 11 F.R.D. 136, and see Schwartz v. Boland & Cornelius, 16 F.R.Serv. 26a.2, Case 1 (S.D.N.Y.); Forstmann Woolen Co. v. Manufacturer's Retail Men's Stores, D.C. S.D.N.Y., 6 F.R.D. 224; United States v. American Optical Co., D.C.S.D.N.Y., 2 F.R.D. 534; Archer v. Cornillaud, D.C.W.D.Ky., 41 F.Supp. 435.

7. Barron & Holtzoff have concluded that the test is a relative one, depending on the degree of knowledge that a movant has as to the documents he requests. See 2 Barron & Holtzoff, Federal Practice and Procedure 515 (Rules ed. 1950). We note also the following language of the Supreme Court in Consolidated Rendering Co. v. State of Vermont, 207 U.S. 541, 28 S.Ct. 178, 52 L.Ed. 327, applied to Rule 34 by Callaway v. Rolland Laboratories, Inc., D.C.W.D.Mo., 9 F.R.D. 88:

"We see no reason why all such books, papers, and correspondence which related to the subject of inquiry, and were described with reasonable detail, should not be called for and the company directed to produce them. Otherwise the State would be compelled to designate each particular paper which it desired, which presupposes an accurate knowledge of such papers, which the tribunal desiring the papers would probably rarely, if ever, have."
207 U.S. at page 554, 28 S.Ct. at page 182.

8. United States v. Certain Parcels of Land, D.C.S.D.Cal., 15 F.R.D. 224, 228; Leven v. Birrell, D.C.S.D.N.Y., 13 F.R.D. 341; Frank v. Tinicum Metal Co., D.C. E.D.Pa., 11 F.R.D. 83; Loew's, Inc., v. Martin, D.C.N.D.Ohio, 10 F.R.D. 143; Bunch v. General Motors Corp., D.C.E.D. Tenn., 9 F.R.D. 682; Simper v. Trimble, D.C.W.D.Mo., 9 F.R.D. 598. This view also finds support in the Notes of the Advisory Committee on Amendments to the Rules, 28 U.S.C. p. 4322 (1952), Fed.Rules Civ.Proc. rule 34 note, 28 U.S. C.A.

9. United States v. United Shoe Mach. Corp., D.C.D.Mass., 76 F.Supp. 315, 317.

10. 329 U.S. at page 507, 67 S.Ct. at page 392.

11. 2 Barron & Holtzoff, Federal Practice and Procedure 497 (Rules ed. 1950).

the issues; that the moving party must establish his claim or defense by documents, most of which are in the adverse party's possession; or that denial of production would unduly prejudice the preparation of the party's case or cause him hardship or injustice.[12] "

Since it appears that Roebling, except for discovery, would be seriously disabled in obtaining evidence which might exist with respect to the decisions and intent of RFC in the early 1940s about the matters in litigation, a denial of the documents, it seems to us, would unduly prejudice her preparation. Here, in contrast with Hickman v. Taylor, supra, and Martin v. Capital Transit Co., 83 U.S.App.D.C. 239, 170 F.2d 811, good cause for the most part has been shown.[13]

However, we find that Roebling's request is in some respects too broad:

Category 1 [14] refers only to documents needed to establish damages if Roebling succeeds in her claim. These documents would serve no purpose now and can be obtained at the time, should it arise, that an accounting is ordered. See Rabinowitz v. Borish, 5 F.R.Serv. 34.41, Case 3 (D.N.J.).

Category 2 has been satisfied as far as need be. Roebling complains that the documents filed do not contain the records relating to the transfer of the last 184,217 shares of stock and the disposition of the collateral other than the stock. Any relevancy of such documents would be to the issue of damages.

Category 3 is relevant only within reasonable time limits, and only if construed as relating to correspondence about the matters in litigation. In the list of documents filed RFC went back as far as December 19, 1939, so we accept that date as to the relevancy of correspondence since then. We see no purpose in requiring the production of correspondence going back to 1934, as requested.

Category 5 has been abandoned by Roebling for the present and need not be produced.

Categories 4, 6, 7, and 8 we think are relevant and should be produced or made available for inspection. We note that in a paper filed in the District Court RFC states that letters and documents on legal matters are scattered through the correspondence and loan-documents files, and that it has no file denominated as "legal." We do not think that the categories requested mean that a file must have the name of the categories as stated; rather the categories are references to subject matters, and documents should not be withheld because RFC has another name for the files.

Upon such discovery being had, and upon supplementing of the record by such admissible evidence, if any, as might result, the case should be redecided, on all counts, with due regard to the requirements of Rules 52(a) and 41(b). Eden v. Lauriat, 103 U.S.App.D.C. ——, 254 F.2d 339.

Implicit in our above rulings is a rejection at this time of certain defenses of appellee, as follows, upon which the District Court made no decision:

1. RFC contends that the action is barred by the statute of limitations and laches because it did not accrue, upon any theory of recovery, within three years preceding the filing of the complaint in August 1954. As the 1934 loan was not completely satisfied until December 1952 it would seem that the obligation of RFC under any contract which might have existed would not have accrued until then. Also to be considered is the claim of Roebling that in 1946 there was on the insistence of RFC

---

12. 4 Moore, Federal Practice 2450 (2d ed. 1950).

13. The RFC specifically stated to the District Court that it claimed no privilege. R. 308.

14. These categories are quoted at page —— of 103 U.S.App.D.C., at page 618 of 257 F.2d, supra.

a modification of the basic contract so that Roebling would be entitled to nothing until after both loans were satisfied. As stated above, the second, 1936, loan was not completely satisfied until May 1954.

2. RFC contends that the statute of frauds bars enforcement of any contract entered into. First, we think that the statute of frauds does not apply to a quasi-contract theory of recovery.[15] Therefore even if it would bar recovery on the express-contract or contract-implied-in-fact theories it would not dispose of the case. Further, Roebling claims that part performance removes the contract from the application of the statute.

3. RFC contends that Roebling's claim merged in her 1954 purchase of the last 40,000 shares of stock from RFC on the ground that this purchase was inconsistent with the alleged basic contract. This does not necessarily follow. It depends upon the circumstances surrounding the purchase as well as the terms of the contract if one existed. For example, if there were a breach of contract on the part of RFC to turn over to Roebling the stock or other assets left in its hands after the notes were satisfied her purchase of the stock would not necessarily preclude consideration, in the accounting and recovery sought, of the amount she paid for it.

All three of these defenses involve questions of fact that may be affected by whatever evidence the further discovery proceedings may produce. We think their determination should be left to the trial judge upon his re-examination of the case.

Reversed and remanded for further proceedings consistent with this opinion.

15. Wilkes v. Stacy Williams Co., 235 Ala. 343, 179 So. 245, 247–48; Olson v. Frazer, 154 Kan. 310, 118 P.2d 505; Berth v. W. G. Knapp Co., 2d Dept., 215 App.Div. 693, 212 N.Y.S. 771; cf. Higgins v. Evans, 188 Mo. 627, 87 S.W. 973, 976; Muri v. Young, 75 Mont. 213, 245 P. 956, 958.