BRYAN, Judge.
Gary Dwayne Hill, the defendant and counterplaintiff below, appeals from a judgment in favor of Premier Builders and Realty, LLC (“Premier”), the plaintiff and counterdefendant below. We affirm in part; reverse in part; and remand with instructions.
The following facts are undisputed. In 2006, Hill negotiated with Cathy Story regarding the purchase of her house in Madison County (“the Story house”). When *672 those negotiations were unsuccessful, Hill negotiated with Deidre Boyd, the owner and manager of Premier, a licensed home builder, regarding (1) his purchasing a lot near the Story house that was owned by Premier and (2) Premier’s building a house for him on the lot that was like the Story house but with certain specified changes. Hill and Boyd orally agreed that Premier would sell Hill the lot and build a house on it like the Story house but with the specified changes for a total price of $232,000. Boyd prepared a written contract for execution by Hill and Premier.
In pertinent part, the written contract provided:
“1. [Premier] covenants and agrees to construct a dwelling and sell the lot to [Hill] ... for the total sum of Two Hundred Thirty-two Thousand Dollars ($232,000), strictly in accordance with the plans and specifications hereto attached and signed by the parties and made a part of this Agreement. See attached Exhibit A. This price includes the purchase of the lot from [Premier],
[[Image here]]
“9. If any action is brought to enforce this contract or any provision of this contract, to rescind the contract, to collect damages for an alleged breach of this contract, for a declaratory judgment under the terms of this contract, for specific performance of this contract, the prevailing party in such action, whether plaintiff or defendant, shall be entitled to an allowance for reasonable attorney fees, in addition to cost of suit.
[[Image here]]
“ADDITIONAL PROVISIONS:
“See attached Exhibit A ‘Specifications’ which is made a part of this contract. Also see attached Exhibit B Presale Selection Sheet and signed copy of floor plans with changes.”
(Emphasis added.)
In pertinent part, Exhibit B to the written contract provided:
“Decoration & Selection Information
[[Image here]]
“Please call the vendors ahead of time if a phone number is included to make an appointment. Be sure to take a copy of your floor plan to make selections.
“1. Samples at Premier Builders office: “Paint: Three wall colors and one trim color. Must be able to cover in two coats or additional labor charges may apply.
Vinyl siding
Cultured Marble
Formica countertops
Hardwood floor
“2. General Shale Brick:....
Allowance: Brick $280 per 1000, Mortar $6.95 per bag
“3. Madison Paint and Decorating....
Carpet (study, hall, bedrooms, closets) $13 per sq. yd. installed
Tile (Kitchen, utility, baths) $5 per sq. ft. installed
Hardwood (foyer, dining room, family rm) $5 per sq. ft. installed
Door hardware, shelving, mirrors, shower door & towel bars $1,500 allowance
“4. Appliances: Sears Commercial One....
Allowance — $1,400 Be sure to get a print out of appliances to give to cabinet maker.
“5. Plumbing Fixtures: McCrary Supply. ... No appointment needed.... Allowance $2,000
*673 “6. Cabinets and kitchen countertop: Custom Cabinets & Countertops.... Allowance $8,500
“7. Lighting: Inline Lighting.... Allowance $1,450
[[Image here]]
“If upgrades are made, a change order must be completed with [Premier] and cost paid before installation ivill occur. Selections must be made with the [Premier’s] vendors for warranty purposes.”
(Emphasis added.)
On September 22, 2006, Hill and Premier signed the written contract, Exhibit A to the contract, and Exhibit B to the contract. Thereafter, Hill and Premier closed the sale of the lot for a purchase price of $32,500. Premier then began building the house on the lot; however, Hill ordered Premier to stop working on the house in December 2006. Subsequently, Hill obtained a new building permit in his own name and employed subcontractors who completed the house.
On January 31, 2007, Premier sued Hill, stating a claim of breach of contract and seeking compensatory damages, prejudgment interest, costs, a reasonable attorney fee, and the enforcement of a ma-terialman’s lien.[1] Answering Premier’s complaint, Hill denied liability, asserted various affirmative defenses, asserted a counterclaim, and demanded a jury trial. As one of his affirmative defenses, Hill asserted that the written contract was not enforceable because, he alleged, he had been induced to sign the written contract by a misrepresentation by Premier. Specifically, he alleged that Premier had represented to him that the written contract incorporated their oral agreement that Premier would sell Hill the lot and build him a house on the lot like the Story house except for the specified changes for a total price of $232,000; that that representation was false because, Hill alleged, the allowances specified for interior selections in Exhibit B to the written contract were too small to buy the same quality of interior selections that had been used in the Story house; that, pursuant to the written contract, exceeding the allowances for the interior selections specified in Exhibit B to the written contract would result in a change order increasing the contract price of $232,000; and, therefore, the written contract did not provide that Premier would sell him the lot and build him a house like the Story house except for the specified changes for a total price of $232,000. Hill’s counterclaim stated a claim of misrepresentation based on those same allegations. Premier answered Hill’s counterclaim and denied that it had misrepresented any facts to Hill.
Thereafter, the action proceeded to trial before a jury. During the trial, Premier did not introduce any evidence regarding its claim for a reasonable attorney fee. At the close of all the evidence, the trial court granted Premier’s motion for a judgment as a matter of law (“JML”) with respect to Hill’s counterclaim. During the discussion regarding jury charges, counsel for Premier indicated that it was Premier’s position that the judge could award Premier a reasonable attorney fee after the trial if the jury returned a verdict in favor of Premier. Hill’s counsel asserted that Hill was entitled to a jury trial with respect to Premier’s claim for a reasonable attorney fee. Thereafter, the trial court submitted Premier’s breach-of-contract claim to the jury but did not charge the jury with *674 respect to Premier’s claim for a reasonable attorney fee. Premier’s counsel did not object to the trial court’s failure to charge the jury with respect to Premier’s claim for a reasonable attorney fee. The jury returned a verdict in favor of Premier and awarded Premier damages in the amount of $19,032.33. On June 17, 2009, the trial court entered a judgment on the jury verdict. On July 13, 2009, Premier applied to the trial court for an award of a reasonable attorney fee and costs and submitted affidavits and documentary evidence in support of its application. On August 4, 2009, without conducting a hearing regarding Premier’s application for a reasonable attorney fee and costs, the trial court entered an amended judgment that awarded Premier an attorney fee in the amount of $24,425.45 and costs in the amount of $2,263.75 as well as the $19,032.33 in damages awarded by the jury.
On September 1, 2009, Hill filed a post-judgment motion challenging the judgment, as amended, on the grounds, among others, that he was entitled to a jury trial with respect to Premier’s claim for a reasonable attorney fee; that he was entitled to have his counterclaim submitted to the jury; and that the jury’s award of compensatory damages in the amount of $19,032.33 was excessive. On October 20, 2009, the trial court denied Hill’s post-judgment motion. Hill then timely appealed to the supreme court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.
Hill first argues that the trial court erred in awarding Premier an attorney fee after the jury returned its verdict because, he says, he was entitled to have a jury decide whether Premier was entitled to recover a reasonable attorney fee and, if so, the amount of that fee. Premier, on the other hand, argues that it would have been premature for the trial court to submit issues regarding an attorney fee to the jury before the jury determined whether Premier was entitled to prevail on its breach-of-contract claim because, Premier says, the written contract signed by the parties provided that the “prevailing party” in a breach-of-contract action was entitled to a reasonable attorney fee and Premier was not the prevailing party until the jury returned a verdict in its favor on its breach-of-contract claim.
In Goodwin v. Household Finance Corporation of Montgomery, 45 Ala.App. 442, 231 So.2d 766 (1970), Household Finance Corporation of Montgomery (“Household Finance”), the holder of a note signed by Goodwin, sued Goodwin to recover $552 pursuant to the note, prejudgment interest, and a reasonable attorney fee. Goodwin demanded a jury trial. With regard to the recovery of an attorney fee, the note provided that “ ‘[t]he amount of any judgment hereon in favor of the holder may include the holder’s actual and reasonable attorney’s fees as determined by the court.’ ” 45 Ala.App. at 444, 231 So.2d at 768 (emphasis omitted). At trial, the judge submitted Household Finance’s claim to the jury. The jury returned a verdict in favor of Household Finance in the amount of $426.24 and requested instructions regarding whether it should include an amount for an attorney fee. Counsel for Household Finance declined to introduce evidence regarding a reasonable attorney fee on the ground that the note specified that that determination was to be made by the “court,” which he interpreted to mean the judge. Over Goodwin’s objection, the judge determined that the language of the note authorized him to determine the amount of a reasonable attorney fee and awarded Household Finance an attorney fee in the amount of $125. Goodwin then appealed to this court. We held that the trial court had erred in removing *675 the issues regarding the award of an attorney fee from the jury. In pertinent part, we stated:
“In this case there was a demand for trial by jury filed by the defendant in accordance with Title 7, Section 260. There was no withdrawal or waiver of that demand. It thus became mandatory for the court to submit issues of fact to the jury for their consideration and verdict. In a jury trial there can be no judgment without a verdict of the jury. Wilkes v. Stacy Williams Co., 235 Ala. 343,179 So. 245 [ (1938) ].
“The issues involving the recovery of a reasonable attorney’s fee by plaintiff included, not only how much, but if any. The wording of the clause in the note as to recovery of a reasonable attorney fee is as follows: ‘The amount of any judgment hereon in favor of the holder may include the holder’s actual and reasonable attorney’s fees as determined by the court.’ (Emphasis ours.)
“This states that a judgment on the note may include actual and reasonable attorney fees. There is nothing mandatory about this part of the contract. It further requires such fees to be determined upon proof of actual and reasonableness of such fees. Thus, there are at least two issues of fact for determination: 1. Whether plaintiff is entitled to any attorney’s fee, and 2. What actual and reasonable fees are due plaintiff.
“The proposition upon which plaintiffs attorney and the trial judge removed this issue from decision by the jury, was that the note stated such fees were to be determined by the ‘court’ and the ‘court’ was the judge. Even if such meaning could be read into the wording of the note, it would have no legal standing in a trial by jury. We do not interpret the word ‘court’ in this instance to be limited to, or synonymous with the word judge. Websters Third New International Dictionary, Unabridged, includes among various meanings of the word court, the following: ‘the persons duly assembled (under authority of law) for the administration of justice; an official assembly legally met together for the transaction of judicial business.’
“The official assembly constituting the ‘court’ at the trial of this case included a jury of good and lawful men and women....
“Title 1, Section 2, 1940 Code of Alabama, is quoted in part as follows: ‘The words “jury” or “juries” include courts or judges in all cases when a jury trial is waived, or when the court or judge is authorized to ascertain and determine the facts as well as the law.’
“We believe the converse to be true, that is, the word ‘court’ includes the word ‘jury’ in all cases in which a trial by jury is authorized, demanded, and not waived.
“We find the judge below erred in removing the question of the right to, and amount of a reasonable attorney’s fee from the consideration of the jury, and entering separate judgment for attorney’s fee without basis of a jury verdict.
“We think sufficient reason and authority has already been given, but in addition, we cite the following from Sheffield Chamber of Commerce v. Hatch, 220 Ala. 601, 127 So. 173 [ (1930) ]: ‘... the question of what was reasonable to be allowed as attorney’s fee was for the jury, though the expert testimony in respect thereto was undisputed, it was merely advisory and not conclusive.’ ”
45 Ala.App. at 444-45, 231 So.2d at 768-69 (emphasis other than on “may” and “actual” added).
The case now before us differs from Goodwin in that the contract signed by *676 Hill and Premier provided that the award of a reasonable attorney fee to the prevailing party in a breach-of-contract action was mandatory rather than permissive. Consequently, in the case now before us, the issue whether Premier was entitled to recover a reasonable attorney fee was not a question of fact. However, the case now before us is like Goodwin in that the issue of how much money constitutes a reasonable attorney fee is a question of fact that must be determined by a jury. See Goodwin. Accordingly, we hold that the trial court erred insofar as it deprived Hill of a jury trial with respect to the issue of how much money constituted a reasonable attorney fee, and, therefore, we reverse the judgment of the trial court insofar as it awarded Premier an attorney fee.
Furthermore, we hold that, when Premier did not object to the trial court’s jury charge, which did not include instructions regarding Premier’s claim for a reasonable attorney fee, Premier waived that claim. See Beiersdoerfer v. Hilb, Rogal & Hamilton Co., 953 So.2d 1196, 1207 (Ala.2006) (“When the trial court charged the jury, it did not charge the jury regarding Beiersdoerfer’s promissory-fraud claim. Moreover, Beiersdoerfer did not object to the trial court’s failure to so charge the jury. By not objecting to the trial court’s failure to charge the jury regarding his promissory-fraud claim, Beiersdoerfer waived his promissory-fraud claim.... Regions Bank v. Plott, 897 So.2d 239, 247 (Ala.2004) (‘When the [plaintiffs] expressed their approval of the jury charge, which did not include instructions on their claim of intrusion on seclusion, they waived that claim .... ’).”); and Alfa Life Ins. Corp. v. Jackson, 906 So.2d 143, 153 (Ala.2005) (“The omission of the claims against English from the jury charge was tantamount to a JML for English and against the plaintiffs. Regions Bank v. Plott, 897 So.2d 239, 243-44 (Ala.2004).”). Therefore, we remand the action to the trial court with instructions to enter a judgment in favor of Hill with respect to Premier’s claim for a reasonable attorney fee.
Hill also argues that the provision in the contract for an award of “cost of suit” did not authorize the trial court to award Premier amounts for items other than the costs authorized by statute. However, the record does not indicate that Hill raised that argument in the trial court. This court cannot reverse a trial court’s judgment on the basis of an argument that is raised for the first time on appeal. See Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) (“This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.”) Therefore, we affirm the judgment of the trial court insofar as it awarded Premier costs.
Hill also argues that the trial court erred in entering a JML in favor of Premier with respect to Hill’s counterclaim.
“The appellate standard for reviewing a ruling on a motion for judgment as a matter of law, a ‘JML,’ is the same as the standard for the original decision by the trial court. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala.1997).
[[Image here]]
“JML in favor of a movant who does not assert the claim or affirmative defense but who only opposes it, and who therefore does not bear the burden of proof, is appropriate in either of two alternative cases. One is that the claim or affirmative defense is invalid in legal theory. See Harkins & Co. v. Lewis, 535 So.2d 104 (Ala.1988). The other is that one or more contested essential elements of the claim or affirmative defens *677 es is unsupported by substantial evidence. See Banks v. Harbin, 500 So.2d 1027 (Ala.1986), and McKerley [v. Etowah-DeKalb-Cherokee Mental Health Board, Inc., 686 So.2d 1194 (Ala.Civ. App.1996) ]. If either alternative be true, JML is appropriate. See Harkins, supra, Banks, supra, and McKerley, supra. If, however, the nonmovant’s claim or affirmative defense is valid in legal theory and is supported by substantial evidence on every contested element, JML is inappropriate irrespective of the presence or weight of countervailing evidence See Driver [v. National Sec. Fire & Cas. Co., 658 So.2d 390 (Ala.1995) ], and First Financial [Ins. Co. v. Tillery, 626 So.2d 1252 (Ala.1993) ].
“.... West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989), explains, ‘substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ A trial court deciding a motion for JML and an appellate court reviewing such a ruling must accept the tendencies of the evidence most favorable to the nonmovant, Wal-Mart Stores, Inc. v. Manning, 788 So.2d 116 (Ala.2000), Southern Energy Homes, Inc. v. Washington, 774 So.2d 505 (Ala. 2000), and Palm Harbor Homes, supra, and must resolve all reasonable factual doubts in favor of the nonmovant, Willis v. Parker, 814 So.2d 857 (Ala.2001).”
Ex parte Helms, 873 So.2d 1139, 1143—44 (Ala.2003).
Hill, as the counterplaintiff, bore the burden of proving his counterclaim. Because Hill’s counterclaim, which stated a claim of misrepresentation, was valid in legal theory, the dispositive issue is whether Hill introduced substantial evidence establishing each essential element of his misrepresentation claim. Reasonable reliance is one of those essential elements. See Alfa Life Ins. Corp. v. Green, 881 So.2d 987, 991-92 (Ala.2003). In Alfa, the supreme court explained:
“To recover in a fraud action filed after March 14, 1997, a plaintiff must prove that he or she reasonably relied on the defendant’s alleged misrepresentation. Foremost Ins. Co. v. Parham, 693 So.2d 409 (Ala.1997). The reasonable-reliance standard was the law before the release of Hickox v. Stover, 551 So.2d 259 (Ala.1989), and again became the law for all actions filed after March 14, 1997. This standard was well-stated in Torres v. State Farm Fire & Casualty Co., 438 So.2d 757, 758-59 (Ala.1983):
“ ‘Because it is the policy of courts not only to discourage fraud but also to discourage negligence and inattention to one’s own interests, the right of reliance comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests. In order to recover for misrepresentation, the plaintiffs’ reliance must, therefore, have been reasonable under the circumstances ....
“ ‘ “If the purchaser blindly trusts, where he should not, and closes his eyes where ordinary diligence requires him to see, he is willingly deceived, and the maxim applies, ‘vol[e]nti non fit injuria.’ ”[2]
‘“Munroe v. Pritchett, 16 Ala. 785, 789 (1849).’ ”
881 So.2d at 991-92 (footnote omitted).
Hill alleged that he was induced to enter into the written contract by *678 Premier’s representing to him that the written contract incorporated their oral agreement that Premier would sell him the lot and build him a house on the lot that was like the Story house except for specified changes for a total price of $232,000; that that representation was false because, he alleged, the allowances specified for interior selections in Exhibit B to the written contract were too small to buy the same quality of interior selections that had been used in the Story house; that, pursuant to the written contract, exceeding the allowances for the interior selections specified in Exhibit B to the written contract would result in a change order increasing the contract price of $232,000; and, therefore, the written contract did not provide that Premier would sell him the lot and build him a house like the Story house except for the specified changes for a total price of $232,000. However, Hill testified that he read Exhibit B to the written contract before he signed that exhibit on September 22, 2006. Thus, he was aware of the amount of the allowances specified in that exhibit for interior selections and that that exhibit provided that his exceeding the allowances would result in a change order increasing the $232,000 contract price. Consequently, he had a duty to investigate whether those allowances were sufficient to buy the same quality of interior selections used in the Story house before he signed the written contract. See Alfa Life Ins. Corp. Hill did not perform such an investigation before he signed the written contract and its exhibits. Therefore, as a matter of law, Hill’s reliance on Premier’s alleged representation that the written contract incorporated their oral agreement that Premier would sell him the lot and build him a house on the lot like the Story house except for the specified changes for a total price of $232,000 was not reasonable. Id. Although the trial court based its JML with respect to Hill’s counterclaim on a ground other than Hill’s failure to prove that his reliance on Premier’s alleged misrepresentation was reasonable, we can affirm “the decision of the trial court if it is right for any reason, even one not presented by a party or considered or cited by the trial judge....” Ex parte Wiginton, 743 So.2d 1071, 1072 (Ala.1999). Accordingly, we affirm the JML in favor of Premier with respect to Hill’s counterclaim on the ground that Hill failed to introduce substantial evidence indicating that his reliance on Premier’s alleged misrepresentation was reasonable.
Finally, Hill argues that the jury’s award of damages in the amount of $19,032.33 was excessive. We disagree.
“ ‘It is well settled that damages awarded for breach of contract should return the injured party to the position he would have been in had the contract been fully performed.’ In cases where the owner has breached a construction contract after partial performance, the proper measure of damages is the difference between the price agreed upon in the contract and the cost of performance, or, in other words, the contractor’s ‘lost profit.’ ”
Med Plus Props. v. Colcock Constr. Group, Inc., 628 So.2d 370, 375-76 (Ala.1993) (footnote and citations omitted). In the case now before us, Premier introduced evidence proving that Hill had breached the contract after Premier had partially performed it and that Premier lost a profit in the amount of $38,396 as a result of Hill’s breach of the contract. Given that evidence, the jury’s award of $19,032.33 was not excessive.
Accordingly, for the reasons discussed above, we reverse the judgment of the trial court insofar as it awarded Premier an attorney fee; we affirm the judgment of the trial court in all other respects; and *679 we remand the action to the trial court with instructions to enter a judgment in favor of Hill with respect to Premier’s claim for a reasonable attorney fee.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. Premier also sued First American Bank, which held a mortgage on the house, seeking the enforcement of a materialman's lien; however, Premier later consented to the entry of a judgment determining that First American Bank's mortgage was superior to the ma-terialman's lien claimed by Premier, and First American Bank is not a party to this appeal.

. See Black’s Law Dictionary 1605 (8th ed.2004), defining the maxim "volenti non fit injuria" as "[t]he principle that a person who knowingly and voluntarily risks danger cannot recover for any resulting injury.”